Adelaide M. Thomason, Appellant, v. Chicago Motor
Coach Company, Appellee.

Gen. No. 39,486.

Opinion filed October 19, 1937.

YOUNG, PARES & PETERSON, of Chicago, for appellant; Thomas J. Young, of Chicago, of counsel.

WALTER N. MURRAY, of Chicago, for appellee; CHESTER D. KERN, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued to recover damages for injuries sustained in an accident while she, a passenger, was alighting from one of defendant's coaches. At the close of plaintiff's case the trial court, upon motion of defendant, instructed the jury to find it not guilty. Plaintiff appeals from a judgment entered upon the verdict.

The second amended statement of claim alleges, in substance, that on November 22, 1933, plaintiff was 64 years of age, about five feet three and one-half inches in height, and weighed 225 pounds, that on that date she boarded one of defendant's coaches in the downtown district of Chicago, paid her fare, and proceeded northerly to Wilson avenue, where she transferred to another 'bus of the same company, which proceeded northerly on Sheridan road until it reached the corner of Lawrence avenue and Sheridan road, plaintiff's destination. The statement describes the second coach or bus as a "one man bus," operated by a single motorman or driver seated in the front part, with no conductor or guard to assist, direct or guide passengers who might be in need of assistance by reason of age or other infirmity to alight therefrom in safety; that the door for passengers to leave and enter was located on the right hand side of the front part of

the coach; that the only hand rail on the left hand side of the exit was located at such a distance from the outer edge of the step leading to the ground as to make it practically impossible for passengers to grasp the rail and at the same time descend safely from the step to the ground; that the only hand rail available for that purpose was located on the right hand side of the right exit door, about six or eight inches inward from the outer edge of the door; that there was but one step leading from and between the floor of the coach to the ground, which step was located at an unusual and dangerous height from the ground, viz., 16 to 18 inches; that all of said equipment made it difficult and dangerous for passengers, especially such as were handicapped by age, overweight, lack of ordinary agility or other infirmity, to safely alight from the coach without assistance or without some kind of platform, curb, or other raised landing to step upon; that the coach was of the same type as had been used by defendant on the streets of Chicago for a long time and defendant well knew its defects and faults; that it was difficult for plaintiff to descend stairs or steps of such height with safety without the aid of a convenient hand rail, platform, curb, or other raised landing to step upon, or without assistance of some kind; that about seven o'clock p. m., after dark, plaintiff arrived at her destination at the northeast corner of Sheridan road and Lawrence avenue, and the driver, or motorman, instead of drawing near enough to the east curb of the street to enable plaintiff to step thereon with safety, brought the coach to a stop in a slanting position with the rear end close to the curb and the front pointing outward, with the step leading from the exit door at such a distance from the curb as to lead plaintiff to believe that she could step to the curb with safety, the outer edge of the step being at a distance of two to two and one-half feet from

the curb; that realizing the difficulty she would have, on account of her age, weight, and general lack of ordinary agility, in descending from the high step to the ground without assistance or the aid of a convenient hand rail on the left hand side plaintiff was obliged to grasp the right hand rail with her right hand and was thereby placed in such a position that in order to descend she would necessarily have to step off with her left foot instead of her right foot, and with her back turned toward the front of the coach; that she used such due care and caution as could reasonably have been expected under the circumstances; that she fully believed that the distance from the step to the curb was such that she could step to the curb with greater safety than she could step to the ground, and fearing that if she stepped to the ground she might be in danger of being struck by the rear end of the coach, which was close to the curb, plaintiff attempted to reach the curb with her left foot, but found that the distance was greater than it appeared to be and that she was unable to reach the curb except to barely touch it with her foot, which slipped from the edge of the curb and came down with great force on the pavement, thereby injuring her left foot and ankle, etc.; that defendant was negligent in failing to have its coach equipped with a convenient hand rail on the left hand side of the exit door, thereby causing passengers, who, because of age or other infirmity, are obliged to depend upon such rail for assistance, to descend therefrom in an awkward and dangerous position; in having its coach equipped with a step of such unusual, inconvenient and dangerous height; in failing to have a guard or conductor at the exit door to assist, direct or guide passengers who because of age or other infirmity might be in need of such assistance in alighting from the coach in safety, or else providing for them some sort of platform or other raised landing to step upon;

that the driver, or motorman, in charge of the coach negligently and carelessly failed to bring the coach to a stop close to the curb when there was nothing to prevent him from doing so, and negligently brought the coach to a stop with the step at too great a distance from the curb to enable plaintiff to step on or to the curb with safety, and yet so near to the curb as to lead plaintiff to believe she could make such step with safety.

Defendant's affidavit of defense denies that plaintiff's injuries were caused by the operation or construction of defendant's coach, or through any negligence of defendant, but were caused by the carelessness of plaintiff in alighting from the coach without looking where she was alighting, and that she knew of the height of the coach step.

Plaintiff strenuously contends that she made out a clear, *prima facie* case against defendant, and that the trial court committed serious error in directing a verdict for defendant. The record fails to show the grounds upon which the trial court gave the peremptory instruction. Defendant contends that the court's action was based upon the theory that plaintiff failed to make out a *prima facie* case that she was in the exercise of due care and caution at the time of the accident or that defendant was negligent, and that the instruction was warranted under plaintiff's evidence and the law.

A number of personal injury cases have recently come to this court wherein juries had been directed to find for defendants where it appeared that the plaintiffs had made out a *prima facie* case, and we, therefore, deem it advisable to restate long settled principles of law that govern the action of a court in passing upon a motion to direct a verdict for the defendant in cases of this character.

" 'A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' (*Hunter v. Troup,* 315 Ill. 293, 296-7.)'' (*Mahan v. Richardson,* 284 Ill. App. 493, 495.)

''The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as a question remains whether either party has performed his legal duty or has observed that degree of care and caution imposed upon him by law, and the determination of the question involves the weighing and consideration of evidence, the question must be submitted as one of fact. . (*Chicago, St. Louis and Pittsburg Railroad Co. v. Hutchinson,* 120 Ill. 587; *Austin v. Public Service Co., ante,* p. 112.) Before we can say, as a matter of law, that there was no negligence on the part of the defendant or that there was such contributory negligence on the part of the plaintiff as to defeat recovery, we must be able to say that all reasonable minds must agree that the defendant was not negligent in his acts or that the injury was the result of plaintiff's own negligence.'' (*Petro v. Hines,* 299 Ill. 236, 240. See, also, *Pollard v. Broadway Central Hotel Corp.,* 353 Ill. 312, 322, 323.)

"Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. (*Thomas v. Buchanan,* 357 Ill. 270; *Mueller v. Phelps,* 252 id. 630; *O'Rourke v. Sproul,* 241 id. 576.) A motion to direct a verdict for the defendant preserves for review only a question of law whether from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. (*Brophy v. Illinois Steel Co.,* 242 Ill. 55; *City of Chicago v. Jarvis,* 226 id. 614.) We cannot weigh the evidence to determine, as a matter of fact, whether the plaintiff was guilty of contributory negligence, (*Dukeman v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.,* 237 Ill. 104,) and we cannot reject testimony as improbable unless it is contrary to some natural law. (*Zetsche v. Chicago, Peoria and St. Louis Railway Co.,* 238 Ill. 240.)" (*Ziraldo v. Lynch Co.,* 365 Ill. 197, 199–200.)

At the time of the accident plaintiff was a school teacher, 64 years of age, five feet three and one-half inches in height, and weighed 225 pounds. On November 22, 1933, about six o'clock p. m., she got on one of the coaches of defendant at Monroe and State streets, paid her fare, and received a transfer slip. Her niece was with her. They were on their way to the Peoples Church, on Lawrence avenue, just east of Sheridan road. The north bound trip of this bus ended at Wilson avenue and at that point plaintiff and her niece transferred to another bus of defendant that went northward on Sheridan road beyond Wilson avenue. Their destination was Lawrence avenue and

Sheridan road. The second bus was "an old style one," commonly known as a "one man bus," with the place of entrance and exit on the right hand side at the front. There was no guard or conductor on the bus. The motorman was located in the front of the bus in a compartment. "There is a loading zone at the place where the coach stopped and a sign that the coach stops here" for loading and unloading passengers. When the bus stopped it "was not quite up to the loading zone." "It stopped back between that loading zone and Lawrence avenue," "in a slanting position; the hind wheel was closer to the curb than the front wheel." Plaintiff went to the door, looked for the hand rail, and grasped the one at the right because the left one was so far in, "16 to 18 inches from the outer step," and with her back partly turned in the direction the bus would move, stepped down with her left foot on the only step from the floor of the coach to the ground. This step was about 16 or 18 inches above the street. From the outer edge of the step to the curb was about two feet. The rear of the bus was about 12 to 16 inches from the curb. As she stood on the step, plaintiff saw that the rear end of the bus was closer to the curb than the front end. "There were no obstacles between the coach and the curb; there was nothing in the way." She looked to see "how was the best way to step, which was the best and safest way to get off." "The curb was about 3 or 4 inches high. On account of the hind wheels of the bus, I didn't feel safe to step between the edge of that step and the curb. I thought I did not have room to step between the edge of the coach and the curb." Plaintiff stepped with her left foot from the step of the bus to the curb. "The instep of my foot landed on the curb, and it scooted down; I couldn't reach the ground, and it scooted down; and I felt as though the interior of my foot was being torn apart."

The injuries and damages sustained by plaintiff need not be considered upon this appeal.

Counsel for plaintiff sought to show by plaintiff why she considered it safer to step to the curb than to the space between the step and the curb, but objections to questions bearing on that point were sustained by the trial court. Defendant was contending that due care on the part of plaintiff required her to step upon the street, and there is some force in the argument that the offered evidence was competent as tending to show that plaintiff, compelled to act quickly, might reasonably conclude that in case the bus started suddenly its rear end, because of the slanting position in which the bus was standing, might strike a person of her age and weight before she could reach the sidewalk. However, a reasonable inference may be drawn from her evidence as to why she did not step to the street.

A carrier is required to use the highest degree of care and caution consistent with the practical operation of the road, to provide for the safety and security of the passenger while being transported. (*Chicago City Ry. Co. v. Pural*, 224 Ill. 324, 328.) It is the carrier's duty to furnish a reasonably safe place for passengers to alight (*Griswold v. Chicago Rys. Co.*, 339 Ill. 94, 98. See also *Paris v. East St. Louis Ry. Co.*, 275 Ill. App. 241, 245); but defendant contends that that general rule has but a qualified application to defendant's service, and cites, in support of the contention, such cases as *Feeney v. Chicago City Ry. Co.*, 220 Ill. App. 400, 405. The *Feeney* case involved a street railway company, which necessarily received and discharged passengers upon the surface of the street, and, under the facts, it has no application to the instant one. As stated in *Paris v. East St. Louis Ry. Co., supra,* at page 245: "A street car cannot be operated so as to discharge passengers at

the curb. A bus can be so operated and ordinarily is so operated.'' It is a matter of common knowledge in Chicago that defendant has regular stopping places where it loads and unloads passengers, and that at such places it has an iron upright, *located on the sidewalk or parkway about one foot inside the curb*. This upright has words upon it indicating that it marks a stopping place for defendant's buses. It is also a matter of common knowledge that it is the custom of defendant, when taking on and discharging passengers, to drive its bus to the curb at a designated stopping place. By its method of doing business defendant holds out to the public the inducement that it will take on and discharge passengers at the curb. One of the great advantages claimed for bus service is that passengers can get on and off the buses without the danger that is sometimes incident to street car rail service. A motorbus service that would discharge and take on passengers on a highway such as Sheridan road would not survive very long. In the instant case there was no obstacle to prevent the motorman from driving the coach alongside the curb at the usual stopping point, and, under the facts, plaintiff would have been justified in arguing to the jury that had he done so the accident would not have happened. As stated in *Paris v. East St. Louis Ry. Co., supra,* at page 246: ''While no statute requires a motorbus carrier to discharge passengers at the curb, and it is true that cars may be parked along the curb, nevertheless a question of fact may be presented whether proper care for the safety of passengers requires that a particular bus should be driven to the curb when it is reasonably convenient to do so on a particular occasion.''

In the instant case we have the additional facts that defendant had regular stopping places at the curb for taking on and discharging passengers and that at the time of the accident there was no car nor obstacle

of any kind to prevent the motorman from driving the bus to the curb. Undoubtedly, the evidence of plaintiff, with all its reasonable inferences most favorable to her, fairly tends to establish negligence on the part of the motorman, and the question of defendant's negligence should have been submitted to the jury.

But defendant contends that plaintiff was guilty of contributory negligence, and in support of that contention argues: "If plaintiff's premise is that the driver was guilty of negligence in not bringing the coach so near the curb that plaintiff could safely step to the curb, then we say that the plaintiff was guilty of contributory negligence in attempting to make the effort. She admits she considered whether she should step on the pavement or step on the curb. Her poor judgment, if such it was, is chargeable to her and not to the defendant." We find no merit in this contention, and, in our judgment, it is idle to argue that all reasonable minds must agree that the injury was the result of plaintiff's own negligence. Defendant's point in support of the instant contention is that plaintiff should have stepped to the ground instead of attempting to step to the curb. The situation that confronted plaintiff was not of her choosing, and it was suddenly forced upon her by the action of the motorman. It was after dark at the time. She was obliged to make a quick decision and she adopted what appeared to her to be the safer one. As stated in *Chicago, R. I. & Pac. Ry. v. Brown*, 229 U. S. 317, 321: "But some judgment was necessary, and whether he should have selected one of the ways which counsel point out admits of debate. It is one thing to judge of a situation in cold abstraction; another thing to form a judgment on the spot."

If plaintiff, under the situation that confronted her, exhibited the care and caution which an ordinarily

prudent person would have exhibited under the same
or similar circumstances, she would not be negligent
merely because, in stepping to the curb instead of to
the ground, she did not take the safer course. More-
over, the evidence tends to show that the reason that
plaintiff did not step to the ground was because she
feared that if the coach were started quickly she might
be struck by its rear end, which was closer to the
curb than the front end, before she reached the side-
walk. It was for the jury to say whether plaintiff,
a woman of 64 years of age and very heavy for a
person of her height, exercised due care. We hold that
the trial court erred in directing a verdict for defend-
ant. To hold otherwise would be to deprive plaintiff
of the right to have her *prima facie* case tried by a
jury.

The judgment of the municipal court of Chicago is
reversed, and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new
trial.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.