Jack Germann, Minor, by Margaret Germann, His Next Friend, Appellant, v. Ward T. Huston, Appellee.

Gen. No. 40,265.

Opinion filed October 31, 1939.

HARRY W. STANDIDGE, of Chicago, for appellant.

JOHN A. BLOOMINGSTON, of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment for defendant, Ward T. Huston, entered upon a verdict directed by the court at the close of plaintiff's evidence.

Plaintiff's complaint as amended alleged that on April 18, 1933, defendant was in possession and control of a building at 820–826 Belmont avenue, Chicago, Illinois; that defendant "then and there and for several months prior thereto, knowingly, negligently, wrongfully and improperly had, kept, maintained and permitted to be at the rear of said building and extending from the top floor to the first floor thereof, a rope which was, and which defendant knew, or by the exercise of reasonable care would have known, to be an attractive nuisance and that such nuisance attracted children to play thereon''; that "said rope was situated in a public place near the home of plaintiff, and that said defendants [defendant] then and there unlawfully, negligently, wrongfully and improperly permitted said rope to remain unfastened and not properly fastened, protected, guarded or enclosed and in such condition of danger that one portion of it could

be moved upward while another portion thereof was being moved downward, in violation of their [defendant's] duty to properly lock or otherwise securely fasten and enclose, guard and prevent such dangerous condition of same; that said rope in such condition was a dangerous and attractive nuisance and attracted children to, and they did, play thereon and went upward and downward therewith, and said defendants [defendant] then and there knew, or by the exercise of proper care would have known, of such dangerous condition of said rope and that children daily played thereon''; that ''then and there said plaintiff, a boy of the age of to-wit, nine years, was attracted by said rope and while playing thereon fell therefrom to the ground or pavement below in the rear of said building, which said ground or pavement consisted or was constructed of cement or other similar material, and by reason thereof said plaintiff then and there sustained'' serious and permanent injuries; and that ''said plaintiff at and before the time of so sustaining said injuries was in the exercise of ordinary care for a boy of his age, capacity, intelligence and experience.'' Defendant's answer admitted his possession and control of the premises in question, but denied all other material allegations of the complaint and the amendment thereto.

Plaintiff's theory as stated in his brief is ''that cases of this nature are divided into two distinguishable classes—one where a defendant has, and the other where he has not, either actual or constructive notice that an instrumentality on his premises attracts children to and that they do play thereon and that it is dangerous for them so to do, and that the case at bar is within the former class; that for a year or more before the accident the particular rope in question which ran over a pulley at the top of the fourth floor of the building described and extended therefrom to the pavement below, was so located that children could and did swing from one porch to another thereon . . . ,

and unlike three other similar ropes on said building . . . , it attracted numerous children and others, from 6 to 20 years of age, to, and they did, play thereon daily during most of the hours of the day and until late in the evening . . . , that said rope in its unfastened and unguarded condition was dangerous . . . ; that such facts were, or by the exercise of reasonable care would have been, known to defendant, and that at and before the time of the accident plaintiff, a boy 9 years old, was in the exercise of ordinary care for a boy of his age, capacity, intelligence and experience, and that it was contrary to law for the Court to direct a verdict on the evidence and that the Court should have allowed the jury to pass thereon.''

Defendant's theory apparently is that the instrumentality involved, situated as it was, did not constitute an attractive nuisance; that plaintiff was guilty of contributory negligence; and that the trial court was justified as a matter of law in directing the jury to find the defendant not guilty.

The evidence disclosed that on April 18, 1933, the building in question was on the northeast corner of Belmont avenue and Clark street, and ''faced, part of it on one and part of it on the other street''; that in the rear thereof, over an alley which was paved with cement, there were four ropes of the same kind running over pulleys which were suspended from beams which extended a few feet beyond the roof of said building; that these ropes descended from the pulleys to the pavement of the alley below; that the rope involved in this case hung loosely over the particular pulley from which it descended and the two ends thereof extended downward to the pavement of the alley, both ends of said rope being always loose and untied except when the children playing with or on same tied one end of said rope to a ''banister'' or some other part of the porch, in the rear of which the rope ''hung''; that plaintiff first saw the rope in question about the fourth

day after he moved to Kraft street, nearly a year before the accident; that he was then eight years old; that the rope could be plainly seen a few doors from where he lived on Kraft street, which was one short block east of Clark street; that plaintiff's sister eleven years old learned about the rope about a week after his family moved to Kraft street and that from that time until the time of the accident she and other children from six to fifteen years of age played on the rope; that during vacation they played on it from about nine in the morning until nine at night; that from the time plaintiff first saw the rope until the time of the accident, he saw children "from 6 to about 17 or 18" playing on it "about from 8 o'clock to about 9 or 10 . . . then the big boys would come out and play on it . . . about every day"; that "there were not many places for a boy to play around there"; that he played on the rope as his sister and others did and that he had previously done what the ordinary boy would do in the way of "climbing around"; that when plaintiff and other children played on the rope, in order to fasten one end of same as it hung loose and untied so that they could use the other "strand" on which to slide "they would wrap one end of the rope which had a hook on it, around a 2x4 of the porch, back of which the rope hung, then hook the end of the rope so as to make it hold, and that they would slide down the other part of the rope, the end of which was untied"; that on the night of the accident plaintiff and another boy seven or eight years old, who lived in the building in question and whose father conducted a bakery therein, went to play on the rope; that plaintiff from the second floor rear porch or on his way up to same called to his boy playmate and asked if the rope was tied; that the other boy answered "yes"; that then both of them slid down the rope from the second, third and fourth floor porches; and that as plaintiff was sliding down the last time the end of the rope, which was tied to the ban-

nister, became loose, the hook on it suddenly went up to the pulley and plaintiff fell violently to the cement pavement below, sustaining the injuries of which he complains. The accident to plaintiff occurred sometime between 7:30 and 9 p. m.

While one witness was permitted to testify that he reported to defendant's janitor sometime prior to plaintiff's injury that children had been playing with and on the rope and had been sliding down same, the court sustained defendant's objections to other evidence offered by plaintiff as to previous accidents to children playing on the rope as well as to complaints made to and statements of the janitor concerning children playing with said rope. This evidence was clearly admissible and competent to show that defendant knew or by the exercise of ordinary care could have known of the attractive and dangerous character of the rope and pulley apparatus. "It has frequently been held that evidence of other accidents by the same agency in the same condition is competent, not for the purpose of showing independent acts of negligence but for the limited purpose of showing that the unsafe thing or condition causing the particular accident caused others, and that the occurrence of such other accidents tends to show notice to the owner of such dangerous agency. (*Moore v. Bloomington, Decatur & Champaign Railroad Co.,* 295 Ill. 63; *City of Chicago v. Jarvis,* 226 id. 614; *City of Bloomington v. Legg,* 151 id. 9.)" *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482.

Defendant's assertion that plaintiff, a boy nine years old, was guilty of contributory negligence as a matter of law under the facts and circumstances in evidence does not merit serious consideration. "The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experi-

ence of the child." *Maskaliunas v. Chicago & Western I. R. Co.,* 318 Ill. 142.

It is hardly necessary to state that defendant's contention that "if the plaintiff depended on the Fernstrom boy (his playmate) to firmly fasten the rope for their joint benefit, then the failure of the Fernstrom boy was imputed to him" is without merit.

We then come to the principal question presented for our determination. Was the action of the trial court in directing the verdict for defendant in this cause warranted under the evidence? In passing upon a similar question in the recent case of *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104, this court quoted from *Hunter v. Troup,* 315 Ill. 293, at page 110 of our opinion:

" 'A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' "

Bearing in mind the rules thus set forth, it is necessary to determine whether plaintiff presented any evidence which fairly tended to prove the material allegations of his complaint. In other words, did the evidence in the record concerning the rope and pulley apparatus, situated, as it was, bring that instrumentality within the attractive nuisance rule. Although there were four rope and pulley arrangements at the

rear of different portions of the premises, the rope upon which plaintiff was playing when he was injured appealed particularly to him and other children of the neighborhood because of its close proximity to the rear porches at the various levels from which it might be easily reached. For nearly a year before plaintiff's accident he and other children ranging upward from six years of age played with the rope and pulley practically daily. Sometimes children would elevate one of their number high in the air by pulling one end of the rope through the pulley after securing the hook on its other end around the child's belt. At other times, as was done here, the end of the rope with the hook on it was turned one or more times around the ''bannister'' at the lower floor and the hook then caught onto said bannister. After thus fastening the hook end of the rope, plaintiff and his playmate on this and other occasions and many other children repeatedly then went to the second, third and fourth floor porches and, after stretching out and securing the unfastened ''strand'' of rope, which extended down from the pulley, wrapped themselves around same and slid to the ground or pavement. There was evidence that the premises were not inclosed and that the rope and pulley arrangement was clearly visible from the street on which plaintiff lived only a short distance away.

To bring this cause within the attractive nuisance doctrine it was incumbent upon plaintiff to show that defendant had either actual or constructive notice that the instrumentality on his premises, considered as part of its general environment, attracted children to play thereon, that they did so play and that it was dangerous for them to do so. Inasmuch as plaintiff presented competent evidence that defendant knew, or in the exercise of ordinary care could have known, that the rope and pulley, located as they were, would reasonably be expected to attract children and that there was a probability of the occurrence of such an accident as hap-

pened to plaintiff, in our opinion it was the duty of the trial court to submit to the jury the question as to whether or not defendant was guilty of the negligence charged in the complaint. As heretofore shown, the question of plaintiff's care or negligence was also clearly one of fact for the jury.

Although in *Darsch v. Brown*, 332 Ill. 592, the judgment was reversed and the cause remanded for a new trial because of an erroneous instruction, controlling principles governing the application of the doctrine of attractive nuisance are enunciated therein, on pp. 596 and 597 as follows:

" 'Under our decisions, which are most liberal to children, if the conditions are such that the owner may reasonably anticipate that children of such tender age as to be incapable of exercising proper care for their own safety may by their own instincts be attracted to the dangerous thing and thereby exposed to danger, he will be liable for an injury to a child so attracted, resulting from leaving the machine or dangerous thing exposed. Under such circumstances he would have good reason to expect that children, from their well known habits and nature, would be attracted to the dangerous thing, and its maintenance would amount to an implied invitation to them, so that they cannot be regarded as voluntary trespassers. (*City of Pekin v. McMahon*, 154 Ill. 141.) It is a necessary element of the liability that the thing which causes the injury is tempting to children and to constitute a means of attracting them upon the premises, which the owner should anticipate. The dangerous thing must be so located as to attract them from the street or some public place where they may be expected to be.'

"In *Ramsay v. Tuthill Material Co.*, 295 Ill. 395, it was held that if the owner knew that children came upon the premises and played around the structure, which was dangerous and attractive, it was not essential to his liability that the structure be visible from

the street; that if one engaged in any operation dangerous to those coming in contact with it, permits children, who are incapable of appreciating the danger, to come upon the premises and expose themselves to danger, he must take such means to prevent injury to them as will be effective or must exclude them from the premises."

In *O'Donnell v. City of Chicago,* 289 Ill. App. 41, where a boy nine years old came in contact with a wire charged with electricity on the top of a pole, 25 feet high, which he had climbed to watch boxing matches being held in a nearby open stadium, this court said at p. 43: "An instrumentality may come within the attractive nuisance rule if it is so placed as to be part of a general environment which is attractive to children. Here the location of the pole gave a vantage point from which to watch the events within the stadium. In *Oglesby v. Metropolitan West Side El. Ry. Co.,* 219 Ill. App. 321, we held that the mere fact that an instrumentality is not in and of itself particularly attractive to children would not exclude it from the application of the attractive nuisance doctrine, and that the question in such cases was whether the owner maintained instrumentalities which, because of their location, could reasonably be expected to attract children."

Defendant in his brief set forth the following testimony of plaintiff: "I had been sliding on this rope for sometime; no one invited me to come over and slide on it; the rope was used for raising and lowering garbage; when I first saw it I did not know what it was for; as soon as I saw the janitor use it for letting down the garbage I knew what it was for. . . . When the janitor saw us sliding on that rope he told us to get away from it; then we would come back; when he told us to get away from it, I understood that to mean to get away from it, . . . it was such fun that we thought we would come back; whenever we

would see the janitor coming we would run away; when the janitor was not there we would come back.''

Then in support of his contention that even though the instrumentality here was both dangerous and attractive the warning to plaintiff to ''go away'' from the rope and his understanding of such warning nullified any implication of invitation that might otherwise have existed, defendant cites *Wolczek v. Public Service Co. of Illinois, supra,* and quotes what the court said therein at pp. 489 and 490:

''The rule recognized in this State as to implied invitation is, that where the owner of the premises maintains a dangerous condition or thing of such a character that he may reasonably anticipate that children, who by reason of tender years are incapable of exercising proper care for their own safety, are likely, because of their childish instincts, to be attracted to the dangerous thing and thereby exposed to dangers, he is required to use reasonable care to protect them from injury, provided it is shown that such dangerous condition or thing is so located as to attract children from the street, playground or place where they have a right to be. . . . The existence of such implied invitation may be disproved by evidence showing that the owner gave notice or warning which such child can understand to keep off the premises. Proof of such warning destroys the implication of the existence of an invitation, and if the child goes on the premises notwithstanding such warning he goes as a trespasser and the owner owes him no duty to protect him against danger.'' In the *Wolczek* case the court also used the following language at pp. 488 and 489:

''The owner of land, however, who allows children to play on his premises must use ordinary care to keep the premises in a safe condition, for the children, being without judgment, are likely to be drawn by childish curiosity into places of danger. (*Ramsay v. Tuthill Material Co.,* 295 Ill. 395.) This rule applies where the

owner expressly or by implication invites children onto the premises. There being no evidence here that the plaintiff in error knew of or expressly consented to the presence of the children on its towers, the rule as to express invitation does not apply.''

It will be noted that in the *Wolczek* case the court distinguished between an ''express'' and an ''implied'' invitation by the owner of premises to children to play thereon and stated that the rule as to express invitation is applicable where the owner of premises knew of or expressly consented to the presence of children playing on same. On the other hand where there was no evidence that the owner of premises knew of or expressly consented to the presence of children playing thereon, the rule of express invitation could not apply but, if an owner maintained on his premises a condition or thing that was inherently dangerous and of a nature that would allure and attract children thereto to play, such condition or thing would in and of itself constitute an implied invitation to engage in such play. Since the plaintiff in the *Wolczek* case was injured on the only occasion when he was on the premises involved and there was no evidence that the owner thereof knew that children played on its property, there was no question of express invitation in that case, but the court there did hold that there was substantial evidence of an implied invitation. The *Wolczek* case cited with approval *Ramsay v. Tuthill Bldg. Material Co.*, 295 Ill. 395, which involved an express invitation. The facts in the *Ramsay* case as to knowledge of the owner of the premises of the habit of children coming on such premises to play are practically identical with the facts in that regard in the instant case. In holding that the rule as to express invitation was applicable to such facts, notwithstanding that employees of the owner of the premises or instrumentality ''frequently told the children to stay away,'' the court said in that case at pp. 401 and 402.

"In this case it appears that for some time children had been in the habit of coming on the premses of plaintiff in error, playing in the sand on the ground, going up the ladder to the top of the elevated structure, jumping into the sand-bins, playing in the sand there, and going down through the openings in the chutes. This was known to the employees of plaintiff in error, who testified that they frequently told the children to stay away, but no effective means were taken to prevent their coming there; so that here the defendant, by taking no effectual means to prevent it, permitted little children, too young to have judgment and exercise care to protect themselves from danger, to play constantly about its premises where it knew that they were habitually exposed to danger which they did not realize and which was likely to result in serious injury or death to some of them, and which actually has resulted so. Under such circumstances the owner of property is responsible for the injury which has occurred by reason of its negligence in failing to use adequate means to keep children away from the danger which it has created.

". . .

"If a person engaged in any operation which is dangerous to others who come in contact with it, permits children who are incapable of appreciating the danger to come upon his premises where they are exposed to danger, there is certainly an obligation in humanity to take such means to prevent the injury, either by excluding them from his premises or protecting them while they are on his premises, as will be effective, and this obligation imposes upon him the legal duty to do those things."

We are impelled to hold that whether defendant knew or should have known that children were likely to be attracted to the rope and pulley apparatus involved here, situated as it was, whether said apparatus was inherently dangerous, whether defendant should

have anticipated such an accident as occurred to plaintiff, whether the rope and pulley considered as part of its general environment was inherently attractive to children, whether plaintiff was in the exercise of ordinary care, and in short whether defendant was guilty of maintaining an attractive nuisance, were all questions of fact which should properly have been submitted to the jury.

For the reasons stated herein the judgment of the superior court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

FRIEND and SCANLAN, JJ., concur.