LILLIAN DE BELLO, Plaintiff-Appellant, *v.* CHECKER TAXI COMPANY, INC., Defendant-Appellee.

(No. 54770;

First District—October 20, 1972.

*Rehearing denied December 8, 1972.*

Goldberg & Fain, of Chicago, for appellant.

Jesmer and Harris, of Chicago, (Julius Jesmer and Robert D. Jesmer, of counsel,) for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This personal injury action was brought against defendant-carrier to recover for injuries sustained when plaintff fell out of defendant's taxi. The trial court, hearing the case without a jury, granted defendant's motion for a finding at the close of plaintiff's evidence, and entered judgment in favor of defendant.

Plaintiff's testimony, the only evidence at the trial, brought out the following facts: On January 6, 1963, at about 11:45 A.M., plaintiff was a passenger in defendant's taxi, traveling from her home to the restaurant where she worked. Upon arriving at the restaurant, the cab driver stopped about a foot away from the curb. After plaintiff paid the fare,

the taxi driver leaned over and opened the back door opposite his seat and on the curb side. Plaintiff was wearing nylon stockings and open-toe shoes, and when she moved her right foot so as to leave the cab through the door which had been opened by the driver, her stocking got caught on a screw which protruded about an inch above the metal strip of molding which ran along the cab's door sill. The molding itself was "crumbled" or "curled up at the edge." Plaintiff, who weighed 200 pounds, did not see the protruding screw or crumbled metal strip before she started to step out of the cab, she having entered the cab through the door on the driver's side. She tried to push her right foot loose with her left foot, but the nylon stocking had twisted around the screw, and her foot was stuck. She was partly out of the door with her right foot still stuck on the screw when she saw a manhole in the street below, between her and the curb. She got dizzy and called out the name of the restaurant's chef who was standing on the sidewalk. She then lost her balance and fell out of the cab. The chef ran over and caught her, but not before her knees hit the concrete. The cab driver remained seated in the cab on the driver's side.

Plaintiff could not remember whether it was raining or snowing, but the street was wet because her stockings and legs were "slushy."

Two men from the restaurant carried plaintiff into the building, and a waitress removed plaintiff's stockings. Plaintiff asked someone to call her doctor at his home. He came to the scene but immediately took plaintiff to his office for X-rays, and then put elastic tape on both of plaintiff's legs. Both knees were scratched and bruised, and both legs "went up like balloons" from the thighs down.

Plaintiff was treated with pain killers and penicillin for an infection which flared up in one of her knees, and after about four or five months, her legs "went down." She is still unable to walk the way she did before the accident because she has an ache in her right hipbone. Since the time of the accident, she has seen three or four different doctors for various treatments in relation to this difficulty.

On cross-examination, it was brought out that about ten years before the accident, plaintiff had a "tightness" in her ankles and a numbness in her right knee which made it hard for her to stand after having been kneeling.

When plaintiff had rested her case, defendant moved the court for a finding in its favor on the ground that plaintiff's evidence had not established a *prima facie* case. The court granted the motion and entered judgment in defendant's favor.

■■ Ill. Rev. Stat. 1969, ch. 110, par. 64(5) provides:

"In all cases tried without a jury, defendant may, at the close of

plaintiff's case, move for a finding, judgment or decree in his favor. In ruling on the motion the court shall *weigh the evidence*. If the ruling on the motion is favorable to the defendant, a judgment or decree dismissing the action shall be entered. If the ruling on the motion is adverse to the defendant he may proceed to adduce evidence in support of his defense, in which event the motion is waived. * * *." (Emphasis added.)

By use of the phrase, "weigh the evidence," in this context, the Civil Practice Act requires the trial judge, at the close of plaintiff's case, to evaluate the evidence by determining the credibility of the witnesses, reasonable inferences to be drawn from their testimony, and, in general, the weight and quality of the testimony, in order to conclude whether or not the evidence to that point of the trial has made out a *prima facie* case in favor of plaintiff.* (*Allfree v. Estate of Rosenthal*, 113 Ill.App.2d 90, 92-93, 251 N.E.2d 792, 793; *Miller v. Heller*, 106 Ill.App.2d 383, 392-393, 246 N.E.2d 150, 156.) On appeal, the reviewing court must itself examine the evidence and determine whether or not the trial court erred in deciding the case contrary to the manifest weight of the evidence. See *Bilyeu v. Plant*, 75 Ill.App.2d 109, 118, 220 N.E.2d 513, 517.

Defendant contends that the finding in its favor was properly entered because the trial court correctly decided that plaintiff had not sustained her burden of proof as to liability. Conceding that a carrier owes to its passengers the exercise of the highest degree of care compatible with the practical operation of its business, it argues that here plaintiff's testimony proved only that an unfortunate accident had occurred—an accident for which defendant was not responsible. Defendant bases this argument on one statement which plaintiff made while being cross-examined at trial. In response to defense attorney's question as to what happened after her stocking got stuck on the screw, plaintiff stated, "Naturally I could see that manhole in front of me. I did get dizzy and * * * I went down * * * both knees down to the concrete * * *." Defendant now contends that plaintiff, by this testimony, disproved her own allegation that the entanglement of her stocking on a protruding screw caused her to trip and fall as she was getting out of the cab. On the contrary, defendant argues, plaintiff's testimony showed that it was her dizziness which caused her to fall from the cab.

We can find no distinction between the two causes as defendant sees it. The fact that the 200-pound plaintiff might become dizzy upon seeing the uneven surface of a manhole directly in front of her as the only place

---

* For a discussion of the trial court's obligation in weighing the evidence, see *Brubaker v. Gould*, 34 Ill.App.2d 421, 440-450, 180 N.E.2d 873, 881-886.

she might step, is not inconsistent with her allegation that it was the protruding screw which caused her to fall. Whether plaintiff fell because her stocking was enmeshed on the screw, resulting in her being off-balance with one foot pinned under her, or whether she fell because, while trying to extricate her stocking from the screw, she became dizzy upon seeing a manhole in front of her, makes no difference. In either case, she was stuck on the screw before and as she fell, thus clearly establishing that fact as a proximate cause of her fall. Nor should it be of any assistance to defendant to argue that it is relieved of liability because plaintiff became dizzy upon seeing a manhole as her only place of exit from the cab; and this in view of the general rule that a carrier must furnish a safe place for a passenger to alight from its vehicle. *Thomason v. Chicago Motor Coach Co.*, 292 Ill.App. 104, 113, 10 N.E.2d 714, 718.

■■ In our opinion, the evidence presented by plaintiff did tend to establish all the necessary elements of a *prima facie* case: the presence of a passenger-carrier relationship, with defendant owing to plaintiff the highest degree of care consistent with the practical operation of its business, the breach of that duty by defendant when it allowed a screw to protrude above the metal molding strip on the door sill and the metal to become "crumbled" or "curled up," the catching of plaintiff's stocking on the screw, causing her to fall to the pavement, and the resulting injury to plaintiff while she was in the exercise of ordinary care for her own safety. The evidence also shows, we believe, that the condition of the screw and the molding strip was such as could not have occurred except by some sort of accident of which defendant would have had current notice, or over a sufficient period of time to have constituted constructive notice to defendant. (See *Neering v. I.C.R.R. Co.*, 383 Ill. 366, 382, 50 N.E.2d 497, 504.) Further, on this point, as argued by defendant —that plaintiff had failed to prove how or how long the screw and the molding strip happened to be in a condition dangerous to passengers— it appears to us that the question of defendant's knowledge, constructive or otherwise, is answered in rather classic form at this stage of the trial by application of the *res ipsa* doctrine.

This conclusion is bolstered by the recent Illinois Supreme Court case of *Katamay v. Chicago Transit Authority* (1972), 53 Ill.2d 27, which affirmed a judgment for the plaintiff. While the principal issue there was whether or not plaintiff was to be considered a passenger,** (a matter over which there is no dispute in the instant case), and the court held that she was a passenger, the opinion went on to say that "[t]he pas-

---

** She was standing on an elevated platform, and when the train came in she started toward it but fell, and was injured, as the flanged heels of her shoes had become wedged between the planks of the platform (she, too, weighed 200 pounds).

senger to whom the carrier owes the duty to exercise the highest degree of care is one who is in the act of boarding, is upon, *or is in the act of alighting from, the carrier's vehicle*". (Emphasis supplied). And further, "If, at the time she fell, she was in the act of boarding, defendant owed her the duty to exercise a degree of care for her safety equal to the duty owed to provide her a safe place to alight."

While the court in *Katamay* did not mention *res ipsa*, we believe the decision must be relevant to that doctrine on this issue as the case had gone to the jury without any proof of a defect in the platform, and without any proof that defendant had knowledge, actual or constructive, that the platform was in an unsafe condition. We consider *Katamay* to represent an *"a fortiori"* situation in relation to the instant case.

We hold, therefore, that the judgment is against the manifest weight of the evidence, and that the order of the trial judge dismissing plaintiff's cause of action was erroneous.

Pursuant to Section 64(5) of the Civil Practice Act, *supra*, the judgment is therefore reversed and the cause is remanded with directions to proceed as though defendant's motion had been denied or waived.

Reversed and remanded with directions.

LORENZ, P. J., and DRUCKER, J., concur.