GORDON IVERSON, Plaintiff-Appellant, *v.* BARBARA IVERSON, Defendant-Appellee.

Second District (1st Division)   No. 75-54

Opinion filed May 6, 1976.

Covey, McKenney & Powers, of Crystal Lake, for appellant.

Bolger & Floro, of Woodstock, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:
Plaintiff, Gordon Iverson, filed suit for divorce on the sole ground of mental cruelty. At the close of the plaintiff's case the trial court allowed the plaintiff to amend his complaint by adding a paragraph containing

specific allegations of mental cruelty and a separate paragraph alleging an attempt on the life of the plaintiff by the defendant by means showing malice. Immediately thereafter the trial court granted the defendant's motion for a directed finding and dismissed the plaintiff's amended complaint. In its memorandum opinion the trial court stated, as its reasons for granting defendant's motion for a directed finding, that the plaintiff had not proven a prima facie case on lack of provocation nor that the treatment by defendant had actually affected the physical or mental health of the plaintiff. On appeal, the plaintiff contends that the trial court's finding that the plaintiff failed to prove lack of provocation and injury to the plaintiff's physical or mental health is against the manifest weight of the evidence; that the trial court erred in not considering and ruling on the allegations in the amended complaint concerning the attempt upon the life of the spouse by means showing malice as a separate and distinct ground for divorce rather than as a part of the grounds of mental cruelty; and that the trial court committed reversible error when it used the results of an independent inquiry as a part of its finding.

The parties were married in 1966, cohabited together as husband and wife until July, 1973, and lived under the same roof until March, 1974. The plaintiff filed his complaint for divorce on September 7, 1973. Two children, Bret and Bart, were born from this marriage and the defendant has one natural child, Martin, from a previous marriage. At a hearing held in March, 1974, the trial court granted temporary custody of Bret and Bart to the plaintiff.

At a hearing on the complaint for divorce, the plaintiff testified that for several years the defendant had cursed at, reviled and demeaned the plaintiff in front of his friends and children in both public and private places. Plaintiff testified that the defendant had accused the plaintiff of homosexuality and adultery and both the plaintiff and his alleged lovers testified that it did not occur. Testimony was also introduced that the defendant made two attempts on the plaintiff's life. Plaintiff then testified that he had never provoked or given the defendant any reason for her actions. Except for the two attempts on the plaintiff's life, all of the above was corroborated by numerous witnesses. Plaintiff also testified that as a result of defendant's conduct plaintiff developed stomach pains which he had never experienced before, was unable to sleep for the first time in his life and began losing weight. Other witnesses corroborated this testimony. They also testified that he complained of chest pains, looked ill, suffered from shakes, became extremely nervous and depressed and underwent a complete personality change.

The defendant, called under section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60), denied all allegations of her

misconduct and stated that the plaintiff had treated her "all right" during their marriage.

The record discloses that the defendant was involved in a one-car accident in January, 1973. She suffered serious physical and mental injury in the accident and she was in and out of the hospital for weeks at a time in January, March and August, 1973. As a result of the accident the defendant became confused, disoriented and suffered episodes of "temper tantrums." Dr. J. G. Graybill, the court-appointed psychiatrist, concluded that the defendant suffered serious brain damage in the accident. Among the physical injuries she received in the accident were a compound fracture of the left patella (kneecap) and a compound laceration of her left petellar tendon. After the accident the defendant had a full leg cast placed on her left leg. She had corrective surgery on the left knee in August of 1973 but was not told that her leg had fully recovered until at least January, 1974.

Section 64(5) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 64(5)) provides that the defendant may file a motion for directed finding at the close of the plaintiff's case in all cases tried without a jury. This section states that in ruling on the motion the court shall weigh the evidence. This has been construed to mean:

> "* * * the Civil Practice Act requires the trial judge, at the close of the plaintiff's case, to evaluate the evidence by determining the credibility of the witnesses, reasonable inferences to be drawn from their testimony, and, in general, the weight and quality of the testimony, in order to conclude whether or not the evidence to that point of the trial has made out a *prima facie* case in favor of the plaintiff." (*De Bello v. Checker Taxi Co.* (1972), 8 Ill. App. 3d 401, 404, 290 N.E.2d 367, 369.)

The court went on to say:

> "On appeal, the reviewing court must itself examine the evidence and determine whether or not the trial court erred in deciding the case contrary to the manifest weight of the evidence." (*De Bello v. Checker Taxi Co.* (1972), 8 Ill. App. 3d 401, 404, 290 N.E.2d 367, 369.)

After a careful examination of the evidence, we find that the trial court erred in granting the defendant's motion for a directed finding and dismissing the plaintiff's amended complaint because the trial court's findings were contrary to the manifest weight of the evidence.

■■ It is well settled that the elements of mental cruelty consist of a course of abusive and humiliating treatment, calculated or obviously of the nature to torture, discommode or render miserable the life of the opposite spouse. Conduct to be considered extreme and repeated mental

cruelty must be unprovoked and of such a nature to cause embarrassment, humiliation and anguish so as to render the life miserable and unendurable or to cause plaintiff's life, person or health to be endangered. (*Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438; *Olson v. Olson* (1973), 13 Ill. App. 3d 888, 300 N.E.2d 765 (abstract opinion).) Whether the misconduct complained of constitutes mental cruelty is primarily determined by its effect upon the aggrieved spouse and the total factual background. *Stanard; Olson.*

In the instant case the trial court determined that the plaintiff had made a *prima facie* case on cause and that the defendant had been guilty of verbal abusive treatment of the plaintiff of such a nature that it did render his life miserable. This is not an issue in this appeal.

The plaintiff does contend that the trial court's finding that the plaintiff failed to prove lack of provocation is contrary to the manifest weight of the evidence. We agree.

The trial court based its finding in this regard on seven factors. They are:

1. the toothpick habit;
2. his complaint that meals be ready without any assurance from him when, or if he can attend them, principally the evening meal;
3. his permitting a dead and maggot-ridden colt to remain in the dooryard or barnyard in the heat of July;
4. his withholding of the insurance proceeds on her car from her for ten months, leaving her in the rural area dependent upon a taxicab for her transportation;
5. his lack of time with the defendant and the children, preferring his hunting and fishing hobbies in whatever leisure time he has;
6. his not communicating with defendant; and
7. his falling asleep on occasions when the parties were out socially.

We do not find that these factors support the conclusion that the plaintiff failed to prove lack of provocation.

We note that there was no evidence from which the trial court could reasonably infer that the plaintiff's "toothpick habit" irritated the defendant. The trial court's reliance upon this factor was completely unfounded.

The second factor is the "ready meal" issue. While it is reasonable to assume that not attending meals that the defendant prepared would upset her, there is no evidence that it did. Instead, there was testimony by one Kevin Keene, who ate meals with the parties during the summer of 1973, that the defendant would verbally attack the plaintiff almost every night during that summer and that this was without provocation by the

plaintiff. In other words, the evidence was that the defendant was angry with the plaintiff whether or not he attended meals. Therefore, the trial court's reliance upon this factor was unfounded.

In considering the dead colt incident, the plaintiff allowed a dead and maggot-ridden colt to remain on the farm for a number of days in July or August of 1972, creating an attractive nuisance for the children, we can reasonably infer that this did irritate the defendant. However, while we find that this conduct may have justified the defendant's conduct at that time, we do not find that it was sufficient provocation to excuse the previously established pattern of abusive treatment of the plaintiff or the subsequent continuation of that treatment by the defendant. We find that the trial court's reliance upon this factor was unfounded.

In considering the withholding of the insurance proceeds, the plaintiff withheld the insurance proceeds from the plaintiff during March through December, 1973 on the defendant's automobile which she had wrecked, we do not find that this was sufficient provocation to excuse the defendant's treatment of the plaintiff. The record reveals that the defendant was neither physically nor mentally capable of handling her financial affairs or of operating an automobile during most of this time period. The evidence was that she had suffered serious brain damage, compound fracture and compound laceration to her left knee. As a result of the damage to her knee she had an operation on it and was placed in a full leg cast. She was not fully recovered from her leg injury until approximately January, 1974. As a result of the brain damage the defendant suffered several violent temper tantrums. Plaintiff also testified that the defendant has threatened to destroy herself and others "the next time." Under these circumstances, and in light of the fact that the plaintiff merely held the defendant's monies until such time as it appeared she was mentally and physically healthy, we find that the trial court's reliance upon this factor was unfounded.

In considering the plaintiff's lack of time with the children, we find this to be totally unsupported by the facts. The evidence was that the plaintiff went out of his way to include the children in his leisure activities. On some weekends the boys would accompany the plaintiff on his veterinarian rounds. On other weekends the plaintiff would take the boys fishing with him. One time when the plaintiff asked if Martin could go fishing with him and the other boys, the defendant responded, "No, take your own rotten son-of-a-bitches with you and go * * *." Furthermore, as the trial court noted in granting the plaintiff temporary custody of Bart and Bret:

> "* * * there seems to be an extreme and bona fide and real interest in the boys.
>
> There has been a relatively good father and son relationship and

even considering the young age of the two boys, there certainly is not any suggestion of any disinterest by him or any evidence of previous abuse or neglect * * *."

We find that the trial court's reliance on this was unfounded.

In considering the plaintiff's lack of time and lack of communication with defendant, we find that there is no evidence that this provoked the defendant. The evidence was that almost any time plaintiff spent with defendant resulted in her verbally attacking him. The only evidence of plaintiff's failure to communicate with the defendant is that he chose to ignore her abusive comments and refused to try to reason with her when she was attacking him. This cannot be considered provocation of the defendant. If anything, it shows a remarkable restraint on the part of the plaintiff to keep from provoking her. Therefore, the trial court's reliance upon these factors was unfounded.

The last factor upon which the trial court relied was that the plaintiff occasionally fell asleep at social events and by doing so provoked the defendant. While we have no doubt that this was upsetting to the defendant, we find that this is a very natural response for a man who usually starts work about 7 a.m. and works a 10-hour day at least 6 days a week. Therefore, we do not find that this act of nature could be held to be a wilful provocation of the defendant excusing the long, continuous pattern of abusive treatment of the plaintiff. Thus, we find that the trial court's reliance upon this factor was not supported by the evidence.

Having reviewed each factor individually and now considering them as a whole, we do not find that these factors support a conclusion that the defendant was provoked by the actions of the plaintiff. Furthermore, the record discloses that the plaintiff testified that he did not provoke the defendant. When the defendant was asked, "How had the plaintiff treated you up until your separation?" she testified that the plaintiff had treated her "all right" during the time of their marriage. Also, there was testimony from numerous witnesses who had observed the defendant's abusive treatment of the plaintiff that they had never seen the plaintiff provoke the defendant. Therefore, for the above stated reasons, we hold that the trial court's finding that the plaintiff failed to prove a lack of provocation is against the manifest weight of the evidence.

The plaintiff's second contention is that the trial court's finding that plaintiff failed to prove the defendant's abusive treatment of the plaintiff actually affected the physical or mental health of the plaintiff is contrary to the manifest weight of the evidence. We agree.

We note that apparently the trial court was moved by the fact that the defendant suffered severe brain damage in a recent automobile accident; that because of her brain damage she would probably not be able to support herself and her son; and that since the plaintiff was divorcing her

so soon after the accident, the plaintiff was doing so because of the defendant's condition. However, the evidence does not support this analysis. Instead, the evidence clearly shows that the defendant was guilty of a pattern of abusive treatment of the plaintiff which was unprovoked and seriously affected his physical and mental health and that the course of conduct occurred both prior to and following the defendant's accident.

■■ In reviewing the record we note that the trial court stated that the defendant's treatment to the plaintiff was of such a nature as to render his life miserable. The evidence was that as early as 1972 the plaintiff was complaining at work to his employees about having stomach pains. There was undisputed evidence that as a result of defendant's abusive treatment of the plaintiff that he had suffered stomach pains; chest pains; shakes; weight loss; loss of sleep and extreme nervousness and depression; as well as became forgetful at work and underwent a complete personality change. Plaintiff testified that, while he did not consult a medical doctor, that he did take medication for his ailments which he prescribed for himself. Considering this evidence, along with the evidence of the pattern of abusive treatment of the plaintiff by the defendant, we hold that the trial court's finding that the plaintiff failed to prove the defendant's abusive treatment of the plaintiff actually affected his physical or mental health was against the manifest weight of the evidence.

The plaintiff next contends that the trial court erred in not considering and ruling on the allegation in the amended complaint that the defendant had attempted to take the life of the plaintiff by means showing malice as a separate and distinct ground for divorce, rather than as an element of the grounds of extreme and repeated mental cruelty. The attempt on the life of a spouse by means showing malice is a statutory ground for divorce. Ill. Rev. Stat. 1971, ch. 40, par. 1.

Section 33 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 33) specifically applies to whether the plaintiff may state separate grounds for divorce in one count. The pertinent parts of that statute read as follows:

> "(2) Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation.
>
> (3) Pleadings shall be liberally construed with a view to doing substantial justice between the parties."

In *Winn v. Underwood* (1945), 325 Ill. App. 297, 60 N.E.2d 116, that court, in response to a motion to dismiss Count II of the complaint for the

reason that the plaintiff had joined two causes of action in one count, relied upon former Rule 12 of the Rules of Practice and Procedure (Ill. Rev. Stat. 1943, ch. 110, par. 259.12) as authority for holding:

> "The language of rule 12, to the effect that a party shall not be required to plead separately, causes of action arising out of the same transaction or based upon the same set of facts, but may make a single statement of the transaction or facts, and follow this with a statement of the various legal grounds upon which he claims to be entitled to recover under such facts, indicates clearly that it would not be ground for dismissal of count two that alternative claims for relief are stated upon a certain set of facts."[1] 325 Ill. App. 297, 303, 304, 60 N.E.2d 116, 119.

■■ Subsequently, *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 90 N.E.2d 645, and *Adams v. J. I. Case Co.* (1970), 125 Ill. App. 2d 388, 261 N.E.2d 1, reiterated the view that duplicitous pleadings, though not in strict conformity with section 33(2) of the Civil Practice Act, are permitted. The court in *Adams* quotes the *Savoie* case:

> " 'The alleged formal deficiencies of the complaint, urged by the defendants, to the effect that numerous causes of actions were pleaded in the same count in violation of the Civil Practice Act [citation], are without merit, inasmuch as the various breaches of duty alleged by plaintiff were based upon the same set of facts, and could be properly treated as a single cause of action, and set forth in the same count.' " 125 Ill. App. 2d 388, 399, 261 N.E.2d 1, 6.

■■ In the instant case we find that the cause of action is for a divorce, that the paragraphs stated various grounds for divorce which arose out of the same set of facts, that the issues were fairly presented to the court and that, at most, this was a formal defect, not a substantive defect in the pleadings. Section 42(2) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 42(2)) permits formal defects in pleadings to be excused. Thus, applying sections 33(3) and 42(2), and adopting the view stated in the above-cited cases, we hold that the amended complaint sufficiently stated one cause of action for divorce based upon two distinct and separate grounds, extreme and repeated mental cruelty and attempt to kill a spouse by means showing malice, arising out of the same set of facts. We find, therefore, that the trial court erred in not considering and ruling upon the allegations that the defendant had attempted to take the life of the plaintiff by means showing malice as a separate and distinct statutory ground for divorce. Ill. Rev. Stat. 1971, ch. 40, par. I.

In light of our disposition of the plaintiff's other contentions we do not

---

[1] We note that the provisions of former Supreme Court Rule 12 are now covered by section 33 of the Civil Practice Act. See Historical and Practice Notes to Supreme Court Rule 135 (Ill. Ann. Stat., ch. 110A, §135 (Smith-Hurd 1968)).

find it necessary to pass on the remaining contention raised by the plaintiff.

For the above stated reasons, the order of the trial court granting the defendant's motion for a directed finding and dismissing the plaintiff's amended complaint is reversed and the cause is remanded with directions to proceed as though the motion had been denied by the trial court. Ill. Rev. Stat. 1971, ch. 110A, par. 366(b)(3)(iii).

Reversed and remanded with directions.

SEIDENFELD and HALLETT, JJ., concur.