## BAKER & REDDICK

*v.*

## EMMA SUMMERS.

*Opinion filed February 18, 1903.*

1. DRAM-SHOPS—*elements essential to recovery for injury to means of support.* In an action under the Dram-shop act for injury to plaintiff's means of support, arising from her husband's death, it is necessary that plaintiff prove the sale or gift of liquor by defendants to her husband, his consequent intoxication, and that such intoxication caused his death.

2. SAME—*what evidence improper in action under Dram-shop act.* In an action against partners in the saloon business for injury to the plaintiff's means of support, it is error to allow a witness to state that he warned one of the partners that a gambling place was running in a room over the saloon but unconnected therewith except by outside stairs, in which room plaintiff's intestate was killed.

3. SAME—*plaintiff must prove facts showing liability under the statute.* An instruction in an action under the Dram-shop act is erroneous which substantially tells the jury that the defendants are liable, under the statute, for all damages sustained, not exceeding $5000, without proof of the facts necessary to create the liability.

4. SAME—*liability does not rest alone upon sale or gift of liquor.* The liability, under the Dram-shop act, for injury to plaintiff's means of support does not rest alone upon the sale or gift of liquor, but also upon the intoxication resulting therefrom, and the consequent injury.

5. INSTRUCTIONS—*instruction leaving jury to determine material allegations is erroneous.* An instruction authorizing a verdict for the plaintiff if the jury believe, from the evidence, that she has established the *material* allegations of the declaration, is erroneous in leaving the jury to determine what allegations are material.

6. SAME—*when instruction is misleading.* An instruction holding that negligence may be the proximate cause of an injury of which it is not the immediate cause is misleading where it cannot be connected with the case, there being no evidence of any negligent act causing the injury.

*Baker & Reddick* v. *Summers*, 103 Ill. App. 237, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

HERRICK & HERRICK, and LEMON & LEMON, for appellants.

MARSHALL C. GRIFFIN, GEORGE K. INGHAM, and C. C. LEFORGEE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action on the case, originally brought by P. M. Smallwood, as administrator of the estate of Harry Summers, deceased, in the circuit court of DeWitt county, against the appellants, who are partners in the business of keeping a saloon in the town of Weldon, in said county. A demurrer to the declaration having been sustained, the appellee, Emma Summers, was substituted as plaintiff, and filed an amended declaration containing five counts. The action was for injury to her means of support on account of the death of her husband, Harry Summers. The general issue was pleaded, and upon the trial there was a verdict for the plaintiff on the first, third, fourth and fifth counts of the amended declaration, and the damages were assessed at $2500. Judgment was entered on the verdict, and the Appellate Court for the Third District affirmed the judgment.

It was alleged in each of the counts that plaintiff was the wife of Harry Summers; that he was shot and killed by one Marcum, and that plaintiff was thereby deprived of her means of support. The first count further alleged that defendants were engaged in selling intoxicating liquors; that they sold such liquors to Harry Summers, in consequence of which he became intoxicated, and by reason of his intoxication he, without reasonable and probable cause, unlawfully assaulted Marcum, upon whom he sought to inflict great injury, and thereupon Marcum shot and killed him. The next count, on which the verdict was based, was the third, in which it was alleged that defendants sold Harry Summers intoxicating liquors,

causing his intoxication, and in consequence thereof he became quarrelsome and abusive, and issued a challenge to fight Marcum, and being unable to use ordinary care in his own behalf became involved in a quarrel which he provoked by reason of his intoxication, and was killed by Marcum. The fourth count charged the sale of liquors by the defendants to Marcum, causing his intoxication, and alleged that in consequence of such intoxication he assaulted and killed Summers. The fifth count charged the sale of intoxicating liquors by defendants to both Marcum and Summers, causing the intoxication of both, and alleged that in consequence of such intoxication they became unable to exercise ordinary care in their own behalf and engaged in a fight, and in consequence of their intoxication Marcum shot and killed Summers.

The evidence tended to prove the following state of facts: Harry Summers was the husband of plaintiff. The defendants kept a saloon in Weldon, and there was a gambling room, run by Dick Greenwood, above the saloon. There was no communication between the saloon and the gambling room. Access to the gambling room was by an outside stairway. Summers had been drinking on the day of his death, in defendants' saloon, and went to the gambling room about eleven o'clock and engaged in playing poker. He remained there until after two o'clock, when he was killed. During this time he and others gave money to one of the employees of the room, who went down-stairs and bought liquor in the defendants' saloon and brought it up to the gambling room, where it was drunk by Summers and his associates. This was repeated several times, and Summers was under the influence of the liquor. There was a controversy between Summers and C. C. Murdock, one of the other players, over a jackpot that Murdock had won. Summers claimed that Murdock had not put in a sufficient number of chips, and Murdock reached over to count the chips, when Marcum came into the room. Marcum

was a stranger in Weldon and a farm hand living in the country near there, but was an acquaintance of Murdock's. He had also been drinking liquor at defendants' saloon. Marcum spoke to Murdock, and while it is difficult to tell from the evidence just what he said, it was probably to this effect: How are you making it? If you are in the right stick to it, or if in the wrong, let it go. This angered Summers, who asked Marcum what he had to do with it, and Marcum replied, in substance, that he had a good deal to do with it. Summers sprang up, saying he could whip Marcum, and rushed at him, throwing off his coat. He struck Marcum in the face, and Marcum, with one arm raised to ward off the blow, fired two shots from his revolver held in the other hand, and killed Summers. Summers was a carpenter and contractor, and one of the board of trustees of the town of Weldon.

On the trial John Lisenby, president of the town board of Weldon, was called and examined as a witness on behalf of plaintiff, for the purpose of showing that he had called the attention of the defendant Baker to the fact that a gambling room was being conducted in the place where the killing occurred. The defendants objected to the questions put to the witness on that subject, but their objections were overruled, and he testified that he had called Baker's attention to the fact a year or more before Summers was killed. Defendants moved to strike out the answer, but their motion was denied. It is plain that this testimony did not tend in any degree to sustain plaintiff's cause of action or to prove the issue on her part. It was proved that Summers was the husband of plaintiff and that he was killed by Marcum, and there was no controversy about these matters. The questions in dispute were, whether there were sales of intoxicating liquor by defendants to Summers or Marcum, or both; whether Summers or Marcum, or both of them, became intoxicated as the result, in whole or in part, of the liquor so sold, and whether such intoxication was the effective

cause of Summers' death. It was necessary for plaintiff to prove the sale of liquor, consequent intoxication, and that such intoxication caused the death of her husband. (*Brannan* v. *Adams*, 76 Ill. 331; *Shugart* v. *Egan*, 83 id. 56; *Flynn* v. *Fogarty*, 106 id. 263; *Meyer* v. *Butterbrodt*, 146 id. 131.) The fact that Baker, who owned the building, knew that there was a gambling room run by Greenwood up-stairs, neither tended to prove the alleged sale or intoxication or that such intoxication was the cause of Summers' death. It could have had no other purpose or effect than to raise a prejudice in the minds of the jury against the defendants concerning a separate and distinct matter, on the ground that one of them assented to the use of his property for the unlawful purpose. The ruling was wrong.

The first instruction given at the request of plaintiff was an abstract proposition of law, stating the liability created by the Dram-shop act, and the right of action thereby given, substantially in the words of the statute, stating the liability to be "for all the damages sustained, and in this case not exceeding the sum of $5000." The instruction contained no other reference to the case and no reference to the evidence, and did not require proof of facts which would create a liability. The instruction was erroneous in substantially telling the jury that the defendants were liable for the damages sustained, not exceeding the sum of $5000, without proof of the necessary facts, and merely because the statute provided for a liability.

The second instruction told the jury that they should find the issues for the plaintiff if she had established, by a preponderance of the evidence, the material allegations of any of the counts in the amended declaration. There was no instruction telling the jury what the material allegations of the several counts were, and what were the material allegations was a matter of law for the court. Although it is a practice not to be commended for the

court to refer the jury to the declaration for the issues, it has not been considered error to make such reference where the instruction requires proof of the averments of the declaration. The proper method is for the court to inform the jury, by the instructions, in a clear and concise manner, as to what material facts must be found to authorize a recovery. The averments in the declaration which would be clear to a lawyer would often be obscure and unintelligible to the average juryman. (*Moshier* v. *Kitchell*, 87 Ill. 18.) Where the jury are not only referred to the declaration to determine the issues, but are instructed to find a verdict for the plaintiff if the material allegations of the declaration are proved, they are left to decide, as a matter of law, what are the material allegations, and might conclude that some allegation essential and material in the law was not material or necessary to be proved to justify a recovery; and such an instruction as this was held to be undoubtedly erroneous in *Toledo, St. Louis and Kansas City Railroad Co.* v. *Bailey,* 145 Ill. 159.

The fourth instruction advises the jury that if the killing of Summers was a result or in consequence of the sale or gift of intoxicating liquor by defendants to him and the negligent act of a man named Doc Marcum, then, if the sale to Summers was the effective cause of the injury, the sale might be regarded as the proximate cause of the killing. It will be seen that this was an involved and confused statement at best, and there was no evidence tending to show that any negligent act of Doc Marcum contributed in any way to the death. The killing was his intentional act in repelling the assault, and the instruction twice predicates the liability upon the sale or gift of liquor to Summers. The statutory liability does not rest alone upon the sale or gift of liquor, but also upon the intoxication resulting from such sale or gift, and the consequent injury. Defendants would not be liable because they sold liquor to Summers or because

the jury might deem such sale the effective cause of the injury, but would be liable on account of the sale and intoxication resulting from such sale, if such intoxication was the effective cause of the injury.

The tenth instruction also bases the liability wholly upon the sale or gift of liquor by the defendants to Summers or Marcum, without any requirement that such sale or gift should have produced the intoxication of either, or that such intoxication should have been the cause of the killing of Summers. It stated that if the sale or gift of liquor to Summers or Marcum, concurring with some other event, produced the killing, and but for the sale or gift the injury would not have happened, defendants would be responsible, even though the sale or gift was not the nearest cause in the order of time. This instruction is based, in part, upon the hypothesis of a sale or gift by the defendants to Marcum without requiring any proof of intoxication, and even if he became intoxicated, if he would have defended himself, when assaulted, in the same manner whether intoxicated or sober, and would have killed his assailant, the killing would not result from his intoxication. In that state of fact the only connection between the killing and the intoxication would relate to the origin of the quarrel, and the question whether Summers would have assaulted Marcum if he had not been drinking liquor.

The eleventh instruction stated that under the law negligence may be the proximate cause of an injury of which it is not the immediate cause. This was a mere abstract proposition of law on the subject of negligence, and it is impossible to connect it in any way with the case, since there was no evidence of any negligent act causing the injury. It would be likely to be misleading, and should not have been given.

The court gave at the request of the defendants fourteen instructions, and they also presented thirty others which they asked to have given, but which were refused.

The refusal to give this volume of instructions is the subject of complaint. It would be an unjustifiable waste of time and space to comment upon them serially. We think they were all properly refused, either as mere repetitions of rules of law already given to the jury, or as not being correct statements of the law.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*