## Anna Attabella, Appellee, v. John Krzepton, Appellant.

### Gen. No. 28,623.

1. HIGHWAYS—*sufficiency of evidence to support verdict for pedestrian struck by automobile.* In an action for damages sustained when plaintiff was struck by defendant's automobile as she was crossing at a street intersection, held that, under the conflicting evidence introduced, the court would not be justified in disturbing the verdict for plaintiff on the facts as against the manifest weight of evidence.

2. NEGLIGENCE—*impropriety of lengthy instructions in language of declaration.* In a negligence case the giving of long involved instructions practically following each count of the declaration

and telling the jury that if they find the facts to be as alleged their verdict should be for plaintiff, is not to be encouraged, such instructions tending to confuse rather than enlighten a jury.

3. NEGLIGENCE—*when refusal to give instruction as to evidentiary weight of unsworn pleading erroneous.* In a negligence case where the court gave instructions for plaintiff in substantially the wording of the declaration an instruction requested by defendant that the declaration is merely the unsworn statement of what the plaintiff alleges and neither proves nor tends to prove any allegation contained in it, was proper and should have been given.

4. HARMLESS ERROR—*refusal to give instruction not reversible where case not close.* On appeal from a judgment for plaintiff in a negligence case though the court would be inclined to reverse the case for refusal of the trial court to give a proper instruction requested by defendant if the case were close on the facts, it will not do so when the evidence strongly favors plaintiff.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Affirmed. Opinion filed June 11, 1924.

LANNEN & HICKEY, for appellant.

FINN & MILLER, for appellee; ROBERT S. COOK, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Anna Attabella, brought this action against the defendant, John Krzepton, to recover damages caused by injuries she received when she was struck and knocked down by an automobile driven by the defendant. She made the usual allegations to the effect that she was in the exercise of due care for her safety at the time of the occurrence and that the defendant was negligent in operating his automobile. The issues were presented to a jury, resulting in a finding for the plaintiff and a judgment in her favor in the sum of $775. To reverse that judgment the defendant has perfected this appeal.

It is contended by the defendant that the verdict

and judgment are against the manifest weight of the evidence. The plaintiff was injured at the corner of Morgan and West 12th Streets, in the City of Chicago, on the forenoon of Sunday, September 5, 1920. Morgan Street is a north and south street and 12th Street is an east and west street. There is a two-track street railway on 12th Street and this street is somewhat wider than the usual city street, there being about 18 feet of roadway between the outside street car rails and the curbstone. The plaintiff and her mother were going south in Morgan Street and the defendant was driving his car, which was a heavy Pierce Arrow limousine, east in 12th Street. The plaintiff was struck as she was crossing 12th Street at Morgan Street, walking south. There were three occurrence witnesses for each side, including the parties themselves. The plaintiff testified that she and her mother were walking south along the west side of Morgan Street and as they came to 12th Street they looked both ways and saw a street car approaching from the west and about a block away; that they started across 12th Street and came to the north or westbound track; that the car came to a standstill on the west side of Morgan Street to discharge and take on passengers; that she suggested to her mother that they proceed across the street but her mother suggested that they let the car go by first; that her mother remained north of the eastbound track while the plaintiff walked on across the street; that just after she got beyond the eastbound track, the defendant's automobile, coming past the street car from the west, struck her; that she heard no horn sounded. The plaintiff's chief injury was a badly broken collar bone. She was taken to the County Hospital where she was given the usual treatment for that sort of an injury, and returned to her home the following day and was cared for by her family physician. Some time afterward she experienced so much pain in her shoulder that her physician thought there might be something wrong, and at his

suggestion some X-ray pictures were taken, which disclosed a situation necessitating an operation and the removal of a broken portion of the bone. This required the return to a hospital for some weeks. The evidence shows that there is a substantial permanent disability in the plaintiff's shoulder and arm. On cross-examination the plaintiff testified that she saw some people getting on the street car and some getting off, but she did not know how many.

The plaintiff's mother gave substantially the same description of the occurrence, saying that when they got to 12th Street, walking along the west side of Morgan Street, she saw the street car approaching from the west, a short distance from Morgan Street, and that the car stopped on the west side of Morgan Street and people were getting off; that her daughter walked on across the street and after she had passed the street car a few feet, the automobile struck her and knocked her down, and then came to a stop near a gasoline station which was located on the southeast corner of the intersection, and when it came to a stop, the plaintiff was on the street under the automobile. This witness testified about the injury to the plaintiff's shoulder and also stated that her head was cut. She testified that she heard no horn sound; that she saw five or six people getting off the car; that after the accident, the conductor got off the car, the car continuing to stand where it had stopped on the west side of Morgan Street.

One Scudrero, a boy 16 years of age at the time of this occurrence, testified that he was on the sidewalk near the southeast corner of the intersection where the gasoline station was located; that he saw the plaintiff and her mother walk across the street at the west crosswalk of Morgan street, going south; that he saw the street car coming toward him from the west; that the plaintiff and her mother reached the westbound track; that the street car stopped to pick up some people; that he saw the automobile coming up to the

street car from the rear and that it "came and knocked her over and pushed her over on the other side of the car near me"; that the automobile turned or skidded so that when it came to a stop the front of it was facing west, with the plaintiff under it; that it passed the street car while the latter was standing and that the street car continued to stand at the point where it had come to a stop. On cross-examination he testified that six or seven people got on the car there and two or three got off. It was also brought out on cross-examination that he was a next door neighbor of the plaintiff; that his father was the proprietor of a grocery and bakery store and the plaintiff came in there now and then to make purchases. He also testified that the street was dry and that the speed of the automobile was about 20 miles an hour.

For the defendant, one Wilson testified that he was a clerk with the Chicago Surface Lines claim department; that according to the rules of his company it would have been incumbent upon the conductor to make a report of any accident happening, in the manner in which the plaintiff and her witnesses had described the accident in question, and that he had searched their records and that he could find no report of any such accident as having occurred at the time and place testified to.

One Lambert testified that at the time of this occurrence he was driving a Ford roadster east along 12th Street; that he saw the defendant's car ahead of him and that he saw the plaintiff and her mother coming from the north at the intersection of 12th and Morgan Streets; that the defendant sounded his horn, and the plaintiff and her mother stopped, and as the defendant drove on, the plaintiff started ahead and ran in front of his machine; that the witness was about 70 feet behind the defendant's car which was going 12 or 15 miles an hour; that the witness had been following the defendant's car for 3 or 4 blocks and that he brought his own car to a stop, to the left or north

side of the defendant's car and a little beyond it; that the defendant had been driving in the eastbound track and the witness was driving a foot or two outside of the track to the south. He further testified that he could not say how far the defendant's car went after it struck the plaintiff and that it skidded a little to the right; that he imagined it went 3 or 4 feet. He was asked if he saw the street car there and he answered that there was a car going toward the east— he figured about a block away. He was also asked on which side of Morgan Street the plaintiff and her mother were and he said they were on the east side of the street. On cross-examination this witness testified that he had never seen the defendant before this occurrence; that he was driving his own car 12 or 15 miles an hour; that the defendant did not stop until the plaintiff crossed over and he hit her; that he imagined the defendant was 30 or 40 feet away from the plaintiff and her mother when he sounded the horn; that when the witness came to a stop they were picking the plaintiff up, at the east crosswalk of Morgan Street and the defendant's car seemed to skid around as it came to a stop.

One Schallman was the proprietor of a store on the north side of 12th Street about 100 feet east of Morgan Street. At the time of the occurrence in question he was standing on the sidewalk in front of his store. He testified that he could not say that he saw the plaintiff hit but he saw her lying underneath the automobile and he ran over and helped put her in the car. He was asked if there was a street car stopped at the west side of Morgan Street at that time and he answered, "Not that I saw." On cross-examination he testified that when the defendant's car came to a stop, it had skidded around and was facing to the northwest, and he again stated that he paid no attention as to whether there was any street car there.

The defendant testified that he was driving his car east in the south track and was going about 12 or 13

miles an hour; that he saw the plaintiff and her mother at Morgan Street between the north and south tracks and that he sounded his horn when he was 40 or 50 feet away from them; that the plaintiff jumped right in front of the car and his left fender struck her; that he stopped his car in 3 or 4 feet; and that the plaintiff "was lying on the front fender * * * off the track, three or four feet on the south side." The defendant also testified that although the day was dry it had rained a little, earlier in the day, and the street was wet. The following questions and answers appear in the defendant's direct examination:

"Q. Was there a street car stopped there on the west side of Morgan street?

A. No; the street car was passed. I followed the street car.

Q. How far had the street car passed?

A. The street car never passed at Morgan street.

Q. Where was the street car when the accident happened?

A. I never saw no street car.

Q. There wasn't a street car stopped there, at the corner of Morgan street and 12th street?

A. No."

The evidence showed that the first street west of Morgan Street was Sangamon Street, and also that Blue Island Avenue, running southwest and northeast, intersected 12th Street a short distance west of Morgan Street. On the defendant's cross-examination the following questions and answers appear:

"Q. You never saw a street car, is that right?

A. No.

Q. There wasn't any street car ahead of you?

A. There was.

Q. How do you know if you didn't see a street car? How do you know it didn't stop at Morgan Street?

A. I was there past. I never saw no street car.

Q. Was there one right ahead of you?

A. Yes, sir.

Q. Was it ahead of you at Sangamon street?

A. I don't know.

Q. Didn't you see it?

A. No.''

The defendant testified that he came into 12th Street at Ashland Avenue, and he was asked if he saw any street cars going the same way he was going and he said that he had seen two between Ashland Avenue and Morgan Street. At this point in the examination the following appears in the record:

''Q. Did you pass them both?

A. No; one I passed.

Q. Where were you when you passed that one?

A. I was pretty close to Blue Island avenue.

Q. Well, Blue Island comes in at an angle right next to Morgan street, doesn't it? Blue Island crosses (Morgan street) at 11th street?

A. Pretty close.

Q. Blue Island is only a short distance from Morgan street?

A. I don't know.

Q. The place where you passed the street car going east, was a short block west of Morgan street, wasn't it?

A. I can't exactly tell you.

Q. You know you passed one?

A. Sure.

Q. Was it standing still when you passed it?

A. No.

Q. Did you come up behind it?

A. I passed on the side of it.''

He denied that as he passed the street car he hit the plaintiff.

On this conflicting testimony the question of the plaintiff's care and the defendant's negligence were matters for the jury to pass upon and we cannot say from the record that their finding was against the manifest weight of the evidence. In some important respects the evidence is utterly irreconcilable. In some respects the evidence submitted in behalf of the defendant is not satisfactory. The testimony of the defendant himself, some of which we have quoted

above, is quite unsatisfactory for he contradicts himself in important particulars. It would seem on one version of his testimony that he did pass the eastbound street car either at or very near the west side of Morgan Street and just before he came to that street. The testimony of the witness, Lambert, also is not as satisfactory as it might be. He testifies that the plaintiff and her mother were standing at a point that must have been to the north of the course of the defendant's automobile, and that the plaintiff jumped out in front of the defendant's car and was struck, while the witness, in his car, came to a stop just to the north of the defendant's car and a little beyond it. What had become of the plaintiff's mother, on that theory, does not appear. It is quite apparent that the other witness for the defendant, Schallman, did not see the incidents leading up to the accident. This court would not be justified in disturbing the verdict on the facts.

The defendant further complains of the refusal of the trial court to give an instruction submitted by him. The court gave four lengthy instructions, based upon the four counts of the plaintiff's declaration, on which her case was submitted to the jury. These instructions followed very closely the language of the respective counts to which they referred, telling the jury that the plaintiff had alleged thus and so in the counts referred to, and concluding that if they found, from a preponderance of the evidence, under the instructions of the court, that the plaintiff had proven her case, as alleged in the counts referred to, then they should find the defendant guilty. We are aware of the fact that the giving of instructions of this kind has been held not to be error. This court has so held in the recent case of *Liska v. Chicago Railways Co.*, 233 Ill. App., post. In that case, however, the instructions involved contained the substance of the respective counts to which the instructions referred. In the case at bar, the instructions contained language fol-

lowing the language of the counts, almost verbatim. Three of the four instructions referred to in the case at bar, each occupy about two typewritten pages of the record and they virtually recite in full the counts to which they refer. In our opinion, such a practice is not to be encouraged. To say the least, it does not lend itself to a clear and unconfusing statement of the case, to the jury. Especially where there are a number of counts, and thus a multiplicity of these instructions, the jury is very likely to become confused and after a reading of a number of such lengthy instructions, involving a statement of all the detailed allegations, repeated as many times as there are counts, and corresponding instructions, the jury is quite likely to get the impression that the court is, in fact, saying what the case comes to, after all the evidence has been heard. The jury, listening to this long recitation with a word or two scattered here and there, to the effect that the plaintiff has alleged thus and so, and that if the jury believes the plaintiff has proven her case, as thus alleged, they should return a verdict for the plaintiff, may very easily be confused rather than enlightened. The court should advise the jury as to the issues presented for their decision in brief and direct terms and not in the lengthy and involved form of the pleadings.

The ruling of the court with regard to which complaint is made does not have to do with the giving of these four instructions, but it has to do with the refusal of the court to give an instruction submitted by the defendant. The instruction submitted read as follows:

"You are instructed that the declaration in this case is merely the unsworn statement of what the plaintiff alleges, and it neither proves nor tends to prove any allegation contained in it in relation to this case."

In our opinion, that instruction was proper in view of the instructions which the court had given, based

on the counts of the declaration to which we have referred. In contending that the instruction submitted by the defendant was improper, counsel for the plaintiff argue that it has been held that the declaration should not be sent to the jury "so the instruction would be telling the jury about something they did not have before them." It would hardly seem to lie in the mouth of counsel for the plaintiff to advance any such argument as that when they had secured the giving of four instructions which practically gave the jury a verbatim copy of the declaration.

If this case were as close a case on the facts as the defendant contends it is, we would be inclined to reverse the judgment and remand the cause, because of the ruling of the trial court in refusing to give the instruction submitted by the defendant, after having given the four instructions for the plaintiff to which we have referred. But, in view of the state of the record, on the evidence, we have come to the conclusion that we would not be warranted in disturbing the judgment by reason of the instructions.

For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Taylor, P. J., and O'Connor, J. concur.