Phillip R. Swenson et al., Appellants, v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Appellee.

Gen. No. 10,263.

288

Opinion filed January 4, 1949. Released for publication January 24, 1949.

THOMAS & DAVIS, of Rockford, for appellants; CHARLES H. DAVIS and HENRY H. CALDWELL, both of Rockford, of counsel.

EDWIN O. SCHIEWE, of Chicago, and WELSH & WELSH, of Rockford, for appellee; M. L. BLUHM, of Chicago, and C. K. WELSH, of Rockford, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

In a proceeding to recover damages for personal injuries sustained by plaintiffs, Phillip R. Swenson,

Ethelyn Swenson, his wife, and Richard Swenson, his minor son, when the car in which they were riding collided with the engine of the defendant railroad, the circuit court entered a judgment for defendant notwithstanding the verdict, from which plaintiffs appeal.

The scope of inquiry on this review is limited to determining whether the evidence, considered in the aspect most favorable to plaintiffs, establishes that they were in the exercise of due care and caution for their own safety.

The evidence adduced before the trial court reveals that at about 8:00 p. m. on June 19, 1945, while it was still daylight, the plaintiff, Phillip R. Swenson, was driving his automobile in an easterly direction on state aid route number 9, near the village of Rockton, and his wife, Ethelyn Swenson, and minor son, Richard Swenson, were in the front seat with him.

This highway is intersected on a diagonal by the tracks of the defendant railroad, which run in a northeast and southwest direction. The intersection is in open country, and is protected by railroad crossing signs mounted on black and white striped wooden posts some fifteen feet on each side of the tracks, and by a state highway warning sign posted about 400 feet from the crossing.

Plaintiffs were riding at a speed of approximately 30 miles an hour and the defendant's passenger train was traveling at about 45 to 50 miles an hour. The evidence is controverted as to whether defendant complied with the statutory requirements for sounding a whistle and ringing a bell some 80 rods before the crossing. Plaintiffs deny that defendant sounded the whistle or rang the bell; however, the engineer and fireman insist that the bell was operating automatically from the last stop at Beloit, and that the whistle or air horn was sounded from the time the train reached the whistling post until the crossing. Moreover, one of plaintiffs' witnesses, as well as a farmer who testified

for defendant, both stated that blasts from the air horn were heard prior to the crash.

Nevertheless, the first time the plaintiff, Phillip R. Swenson, looked to the left, from which direction the train was approaching, was when his car was some 20 to 25 feet from defendant's tracks, and the train appeared to be about 40 to 50 feet from the intersection. Ethelyn Swenson testified that she only looked to the right, and Richard Swenson stated that he did not remember whether he looked or not. When he finally did see the train, Phillip Swenson swerved his car to the right, and the right step of the pilot on the side of the engine struck the left side of the car as it crossed onto the north edge of the railroad's right of way. The plaintiffs were thrown from the car, rendered unconscious, and were taken to the hospital where they were treated for serious injuries.

Plaintiffs contended that they did not stop and look for the train because they heard no warning bell or whistle, and their view to the left was obscured by saplings, weeds and shrubbery which grew parallel to the highway and upon the defendant's right of way. Phillip R. Swenson testified that on June 19, 1945, there were weeds and saplings some 25 to 30 feet to the left of the highway, growing in a ravine about 5 to 7 feet deep, and also along defendant's right of way. He further stated that some 200 to 250 feet to the left of the highway there was a row of shrubbery, including some trees about 20 to 25 feet high. Another witness, testifying on behalf of plaintiff, stated that the saplings grew below grade level, to some 5 to 6 feet above the level of the highway, and also attested to the fact that there were some trees about 12 rods from the road, which extended up to the defendant's right of way.

Defendant offered testimony that the weeds and brush growing on its right of way were not cut until the first part of July 1945, since there was nothing over two feet above the ground. There was other

testimony that the cab of the engine is about 13½ feet high, as compared with the height of the alleged obstructing shrubbery.

Defendant also introduced in evidence seven photographs of the area, taken on June 24, 1945, five days after the collision, which showed the degree of visibility of the tracks from various points along the highway. These pictures revealed that at a point on the highway 140 feet from the intersection a trestle bridge only a few feet high, located some 1200 feet down the tracks, could clearly be seen, and that visibility in the direction from which the train was coming increased as the intersection was approached.

Plaintiff, Phillip R. Swenson, and one of his witnesses maintained that only one of the seven exhibits presented a completely accurate portrayal of the area, and that was the one taken from the opposite side of the intersection. They stated that some of the shrubbery appears to have been left out of those photographs taken with the camera facing the same direction as plaintiff's car did on the date of the collision. All of the photographs, however, were taken on the same day by the same photographer.

On the basis of the evidence presented, the trial court set aside the verdict of the jury in favor of plaintiffs, and granted defendant's motions for judgment notwithstanding the verdict and for a new trial. In setting forth its reasons for this judgment, the trial court, before counsel, first examined the photographs with a magnifying glass to determine whether the shrubbery in the area had been cut before the pictures were taken. The court concluded that the growing tops of the weeds were clearly visible, and that the photographs apparently portrayed the area as it existed on or about the time of the collision. The court then measured with a ruler the distance from the trestle bridge to the highway on the basis of measurements contained in a plat stipulated to be accurate, and found that the bridge and, a fortiori, any train upon it, was

clearly visible at a point on the highway 160 feet from the intersection. Moreover, the view of any train approaching from that direction was completely unobstructed from 160 feet west of the intersection up to the tracks.

Under these circumstances the court concluded that inasmuch as plaintiff, Phillip R. Swenson, did not look in the direction of the approaching train until he was about 20 feet from the intersection, and then did not stop his car, but merely swerved it to the right, he clearly did not exercise due care, and was therefore guilty of contributory negligence as a matter of law. The plaintiffs, Ethelyn Swenson and Richard Swenson, who did not even look to the left or give any warning to the driver, were, therefore, also guilty of contributory negligence, and were barred from recovering damages for their injuries.

In determining the propriety of this judgment this court must ascertain whether plaintiffs presented evidence to support the essential allegations that defendant was guilty of negligence which proximately caused plaintiffs' injuries, and that they were in the exercise of due care for their own safety.

The only evidence of defendant's negligence is plaintiffs' denial that a whistle was sounded or a bell was rung. This testimony, which is of limited persuasive value, (*Berg v. New York Cent. R. Co.*, 391 Ill. 52) is controverted by the statements of the engineer, the fireman, a neighboring farmer, and one of plaintiffs' witnesses. Nevertheless, plaintiffs' denial that a warning was given constitutes some evidence of negligence, hence that issue could have been submitted to the jury. Were this the sole issue in the cause, this court could properly conclude that the clear weight of the evidence was that the automatic bell was ringing and the whistle was sounded.

The fundamental issue, however, is whether plaintiffs were in the exercise of due care for their own safety, or whether they were guilty of contributory

negligence as a matter of law. If there is no evidence tending to show affirmatively that plaintiff was exercising due care, and it is obvious to the court that the injury was the result of plaintiffs' negligence, a verdict for the defendant should be directed. (*Fitch v. Thomson,* 322 Ill. App. 703; *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270; *Carrell v. New York Cent. R. Co.,* 384 Ill. 599; *Wuerz v. Southern Ry. Co.,* 318 Ill. App. 1.) The burden of establishing freedom from contributory negligence, however, is on the plaintiff. (*Niederle v. Chicago Rapid Transit Co.,* 264 Ill. App. 346.)

The cases are replete with admonitions by the courts that railroad crossings are sites of danger, and should be approached with care commensurate with the known hazards. (*Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627.) Persons approaching a crossing have a duty to look about them and determine whether there is danger, and then to take proper precautions to avoid injury, rather than to proceed recklessly upon the tracks. Failure to exercise such caution is deemed negligence. (*Carrell v. New York Cent. Co., supra; Greenwald v. Baltimore & O. R. Co., supra.*) Moreover, greater care should be exercised where the view is obscured and the location known to the driver. (*Moudy v. New York, C. & St. L. R. Co.,* 385 Ill. 446.)

In the instant case, plaintiffs have traversed this crossing many times. It was still daylight, and they could see the state warning sign on the side of the highway some 400 feet from the intersection, and the black and white striped posts with the cross arms on which the words "Railroad Crossing" appeared in large letters, on each side of the tracks. Nevertheless, Phillip R. Swenson continued driving at a speed of 30 to 35 miles per hour without slowing down to any extent as he approached the crossing, and admittedly did not look to the left in the direction from which the train

was approaching until he was about 20 to 25 feet from the tracks. When he saw the train, which was some 40 feet from the intersection, he did not stop his car, but merely swerved it to the right.

Plaintiff, Phillip R. Swenson, contends that his failure to look in the direction of the train was excused by the fact that the view was obscured by saplings, shrubbery, and weeds growing in the ravine and along defendant's right of way. He argues, therefore, that the issue of whether he was negligent was a question for the jury.

 It is an established principle of law that failure to look and listen at a railroad crossing may not be negligence as a matter of law. (*Langston v. Chicago & N. W. Ry. Co.,* 330 Ill. App. 260; *Niemi v. Sprague,* 288 Ill. App. 372.) However, whether plaintiff's negligence becomes an issue for the jury depends upon the circumstances of the case. (*Wuerz v. Southern Ry. Co., supra; Briske v. Village of Burnham,* 379 Ill. 193, 201.)

██ The evidence in the case at bar with reference to the alleged obstructing shrubbery clearly indicates that it did not excuse plaintiffs' failure to look in the direction from which the train was approaching, nor convert otherwise negligent conduct into reasonable prudence, so that it could be contended that plaintiffs offered evidence of due care. According to plaintiffs' testimony there was a row of weeds and saplings some 30 feet to the left of the highway growing in a ravine about five to seven feet below the level of the road. For this growth in the ravine to have even come up to plaintiffs' eye level, it would have had to be at least 10 feet high, and there is no evidence to that effect in the record. Nor is there any evidence that this shrubbery was so tall and so dense up to the intersection on June 19, 1945, that had plaintiff Phillip R. Swenson looked to the left as he rode toward the crossing he could not possibly have seen an approaching train

until he was 20 feet from the tracks, which is the point at which he first looked to the left.

Plaintiff testified further that there was another row of brush and saplings which included some trees about 200 to 250 feet left of the highway. It is apparent, however, that these trees were sufficiently distant so as not to interfere with or affect plaintiff's view of the environs.

With reference to the weeds and brush along the defendant's right of way which plaintiffs alleged grew to a height of 4 to 6 feet, it is not clear to the court just how this shrubbery could have hidden or obscured an engine which, as a matter of common knowledge, is about 15 feet high. The party charged with cutting the weeds along defendant's right of way stated that no shrubbery was cut until the first part of July 1945, for prior thereto there were no weeds over two feet high. This witness stated specifically that no weeds were cut between June 19, the date of the collision, and June 24, when certain photographs were taken of the area by the defendant.

These photographs introduced in evidence by the defendant reveal that there were some weeds and shrubbery growing in the ravine some 30 feet left of the highway, and also along defendant's right of way. It does not appear, however, that there was any growth of sufficient height or density to obscure the engine of a train. They further indicate that a clear, unobstructed view for more than 1200 feet down the track was visible from a point on the highway 140 feet from the intersection, and that visibility increased as the intersection was approached. Furthermore, this visibility was enhanced by the fact that the railroad tracks approached and traversed the highway at a diagonal.

Plaintiff's assertion that some of the shrubbery appears to be left out in some of defendant's exhibits is not well founded, since all of the photographs were taken on the same day by the same photographer, and

there is no evidence or inference that after one picture was taken the weeds were cut and then the remainder of the pictures were taken.

█ From a careful examination of these exhibits and of the testimony offered on behalf of plaintiffs, it appears to this court that plaintiffs Phillip R. Swenson, Ethelyn Swenson, and Richard Swenson did not comply with a standard of reasonable prudence as they approached this railway intersection. They had a duty to look to see if there was any imminent danger; this duty was enhanced rather than excused by the fact that there were weeds and shrubbery along the open country. Plaintiffs were familiar with the crossing; it was daylight, and the evidence indicates that they had an unobstructed view for some 1200 feet down the tracks from a point on the highway about 140 feet from the intersection. This visibility increased as they approached the crossing, nevertheless, plaintiffs Ethelyn and Richard Swenson did not look to the left at all to see if a train was approaching, and plaintiff Phillip R. Swenson looked to the left for the first time when he was about 20 feet from the tracks. Clearly this does not constitute evidence of due care under the standards imposed by the courts.

In *Greenstreet v. Atchison, T. & S. F. Ry. Co.,* 234 Ill. App. 339, where plaintiff looked for a train some 55 feet from the crossing when his view was obstructed, but did not continue to look thereafter when the view became unobstructed, the court held that plaintiff failed to exercise due care, and directed a verdict for the defendant. In *Fitch v. Thomson, supra,* where plaintiff had an unobstructed view of the tracks for the first time some 50 feet west of the crossing, and failed to look for a train, the court held that he was guilty of contributory negligence as a matter of law, despite his assertion that no bell was rung nor whistle blown.

From the foregoing analysis of the evidence presented herein, and a review of the guiding principles

of law, it is the opinion of this court that defendant's motion for judgment notwithstanding the verdict was properly granted, and the judgment of the circuit court should be affirmed.

*Judgment affirmed.*