William Bales, a Minor, by Ray Bales, his Father and Next Friend, Appellee, v. Pennsylvania Railroad Company, Appellant.

**Gen. No. 45,577.**

Opinion filed July 1, 1952. Rehearing denied July 29, 1952. Released for publication July 29, 1952.

THEODORE SCHMIDT, P. J. CRONIN, and HARRY I. PARSONS, all of Chicago, for appellant; JAMES L. HENRY, and CLARKSON W. LOUCKS, both of Chicago, of counsel.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. PRESIDING JUSTICE ROBSON delivered the opinion of the court.

This is an action for personal injuries sustained by the plaintiff, William Bales, an eighteen-year-old minor, as a result of the collision of his automobile with a train of defendant, Pennsylvania Railroad Company, a corporation. The case was tried before a jury and a verdict of guilty rendered upon which the superior court of Cook county, Illinois, entered judgment in favor of the plaintiff for the sum of $27,500. The

usual motions were made by the defendant which were denied by the trial court. No issue is raised by the pleadings.

Defendant relies on two contentions for the reversal of the judgment of the trial court, the first being that plaintiff was guilty of contributory negligence as a matter of law and the trial court should have instructed the jury to return a verdict for the defendant. The second, that the trial court erred in giving to the jury at the request of the plaintiff a two-page instruction which included the verbatim incorporation of numerous allegations of the complaint.

The decision of these contentions requires an analysis of the evidence. The salient facts as revealed by the record are that on May 14, 1947, defendant's nine-car passenger train was traveling from the Union Station in Chicago to Logansport, Indiana. The scene of the accident was at a crossing at Bernice road, a two-car thoroughfare which runs in an easterly and a westerly direction in Lansing, Illinois. The tracks of defendant at this crossing are level with the ground and run at a slight angle in a northerly and southerly direction. There was a single passenger track, on which trains operated in both directions, and two freight tracks west of it. The passenger track curved at a point about one and a half blocks north of the crossing. The day was clear, the sun was shining and Bernice road was dry and in good condition.

The engineer and the fireman of defendant's train testified that on the day in question they were due at Bernice crossing at 10:30 a. m. central standard time. The train was 26 minutes late. They testified that the train as it approached the Bernice road crossing was traveling 25 to 30 miles an hour, which was the speed limit set by the speed signal.

As to the collision, defendant's engineer and fireman testified that from Colehour Junction to Bernice road

469

defendant's train crossed numerous crossings; that the automatic bell which operates by air was turned on at Colehour Junction and rang continuously thereafter. The locomotive was also equipped with a steam whistle operated by the engineer and he testified that at about 1300 feet north of Bernice road there was a whistling post and that when he reached it he gave the regular crossing signal whistle. Plaintiff and four of his witnesses testified that at the time they heard no bell or whistle. The fireman testified that he was sitting on the left side of the locomotive cab when it was about 125 feet north of the crossing; that he saw plaintiff's automobile coming from the east at a distance of approximately 150 feet from the track. The automobile was going at a pretty good rate of speed. The car sort of shifted and skidded when the driver applied his brakes about 50 feet from the crossing. When he saw that the automobile was going to hit the train he immediately told the engineer to stop. The automobile then struck the upper left side of the locomotive pilot at the height of the cylinder head. The automobile was still in motion at the time of the collision. The engineer was on the other side of the train and did not see the car or the collision. The train was brought to a stop in eight car lengths. There was one car on the crossing—the last one.

Plaintiff testified that on the day in question he was employed at the Nagle Packing Company which was about 300 yards from the crossing, which he had crossed about four times daily for over three years; that he was following an automobile operated by his brother who was about a half block ahead of him. As he approached the crossing he was traveling about 20 or 25 miles an hour. He looked to the left when about 15 or 20 feet from the crossing and saw no train. He could not see the train coming from his right until he was about 10 or 15 feet from the rails because there

470

were weeds, shrubs, a fence and trees around the last house on Bernice road which is adjacent to the alley running along the east side of the tracks. He immediately applied his brakes. The front end of his car came to a stop about a foot from the tracks and the overhang of the train apparently hit it and turned it over. He didn't know the train was due at that time. It usually came through 15 or 20 minutes earlier. After the accident the police found plaintiff's car turned over in a ditch just south of the road and east of the tracks. The plaintiff and defendant's fireman were the only eyewitnesses to the occurrence.

Both plaintiff and defendant introduced photographs showing the scene of the accident. Defendant's photographs by a memorandum attached to them indicate that they were taken the day after the accident. There is nothing in the record to indicate when plaintiff's photographs were taken. Neither photographer testified nor was a plat of the scene of the collision introduced by plaintiff or defendant.

There is substantial conflict in the evidence as to how far east of the tracks, due to the obstruction of the house, the trees, weeds and shrubs, a person could observe a train approaching Bernice road from the north. In addition to plaintiff three of his witnesses testified as to the distance. William Stamp testified it was 40 feet; James Bales testified it was 10 to 15 feet and Edward Van Laningham, the chief of police of Lansing, testified it was 20 feet. The only evidence introduced by defendant bearing on this point was one of defendant's photographs to which a memorandum was attached by the photographer indicating that in the center of the road 95 feet east of the center of the track a clear view could be obtained of it.

There were no warning signals at the tracks other than a circular warning sign three and a half feet tall which had reflector buttons on it, a cross and the letters

471

"R.R." which was located between the street and sidewalk about 620 feet east of the tracks, and the usual white crossbuck. Three of plaintiff's witnesses testified that weeds obscured the warning sign but one of defendant's photographs showed there were no weeds obscuring it. The crossbuck at the railroad tracks was clearly visible from a distance of approximately 630 feet.

Edward Van Laningham, the chief of police, testified that the daily traffic of automobiles over the tracks in question was one to two thousand cars. Another witness testified that he estimated approximately 750 to 1,000 automobiles crossed the tracks daily. Defendant offered no testimony on this point. Defendant's engineer and fireman testified that along defendant's right of way there were no weeds and nothing to obscure the view and defendant's photographs also substantiate this testimony. Plaintiff's witness, Mildred Wright, who lived adjacent to the tracks testified that there were weeds to the north and west along defendant's right of way.

██ The facts as stated reveal that the issue of whether plaintiff is guilty of contributory negligence as a matter of law is one that is close. When a motion is made to instruct the jury to find for the defendant the evidence, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's complaint. *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104; *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 Ill. 188; *Lloyd v. Rush,* 273 Ill. 489; *Hunter v. Troup,* 315 Ill. 293, 296; *Mahan v. Richardson,* 284 Ill. App. 493, 495.

■ The question of whether plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. *Thomason v. Chicago Motor Coach Co., supra; Thomas v. Buchanan,* 357 Ill. 270; *Mueller v. Phelps,* 252 Ill. 630; *O'Rourke v. Sproul,* 241 Ill. 576.

■ It is likewise well established that in passing upon a motion by defendant for judgment notwithstanding the verdict of the jury, the court is bound to follow the same rule as applies on a motion for a directed verdict at the close of all the evidence. *Osborn v. Leuffgen,* 381 Ill. 295, 296; *Walaite v. Chicago, R. I. & P. Ry. Co.,* 376 Ill. 59, 61.

■ Defendant cites as sustaining their contention *Moudy v. New York, C. & St. L. R. Co.,* 385 Ill. 446; *Swenson v. Chicago, M. St. P. & P. R. Co.,* 336 Ill. App. 287; *Carrell v. New York Cent. R. Co.,* 384 Ill. 599; *Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627, and *Monken v. Baltimore & O. R. Co.,* 342 Ill. App. 1. In each case there was a variation in the facts but the point upon which the decision was finally determined was whether or not plaintiff's view of the train prior to the collision was unobstructed. If it was unobstructed, defendant was entitled to a directed verdict. If it was not, it was a question of fact for the jury to decide. It is a well known rule of law that a traveler must make use of his sense of sight and hearing and exercise care commensurate with the danger to be anticipated in approaching a crossing, *Carrell v. New York Cent. R. Co., supra,* but it is not a rule of law that the omission of a duty to look and listen will bar recovery where there are facts excusing the performance of the duty. *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386; *Chicago & E. I. R. Co. v. Schmitz,* 211 Ill. 446.

Applying this statement of the law, we believe there are facts in the record which distinguish this case from those cited by the defendant. The facts as heretofore stated are that at the time of the occurrence the last house on Bernice road, which is adjacent to an alley running along the east side of the tracks where the accident took place, was surrounded by trees, weeds, shrubs and a fence, and there were weeds along defendant's right of way, all of which obstructed the view of the track until plaintiff was 15 or 20 feet from it. Plaintiff applied the brakes on his car as soon as possible after he saw the train and came to a stop about one foot from the track. His car was struck by the overhang from defendant's train. The plaintiff, although acquainted with the tracks and the immediate vicinity, did not expect the train because it was later than usual. We conclude that this evidence distinguishes the instant case from those cited by the defendant and that, therefore, it became a question of fact for the jury to decide.

In addition, the record reveals that plaintiff and four witnesses testified that at the time of the accident they heard no bell or whistle although the engineer and fireman of defendant's train said that the bell was ringing and they gave the regular crossing whistle at Bernice road. Bernice road was heavily traveled—one to two thousand automobiles per day. The only type of warning was a warning sign and a crossbuck. There is evidence that the warning sign was not visible because of high weeds.

A railroad company is required to exercise ordinary prudence and care in operating its trains to prevent injury to those who travel upon a public highway crossing its tracks. It must ring its bell or blow its whistle in accordance with the statute, and must operate its trains at a reasonable rate of speed depending upon the conditions of a particular situation. *Wag-*

474

*ner v. Toledo, P. & W. R. Co.,* 352 Ill. 85; *Humbert v. Lowden,* 385 Ill. 437; *Hughes v. Wabash R. Co.,* 342 Ill. App. 159. It is also required not only to comply with the statutory requirements in the matter of signals, flagmen and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment. Special conditions creating special hazards at crossings require a watchman, gates or other warning to travelers. *Wagner v. Toledo, P. & W. R., supra; Willett v. Baltimore & O. S. W. R. Co.,* 284 Ill. App. 307.

█ Therefore the question of whether defendant rang its bell or blew its whistle and whether the crossing was properly protected was an issue for the jury to decide.

There is a very close analogy to the facts in the case before us and *Karlock v. New York Cent. R. Co.,* 333 Ill. App. 655. The *Karlock* case was cited with approval in *Hughes v. Wabash R. Co., supra,* and *Monroe v. Illinois Terminal R. Co.,* 346 Ill. App. 307. In each of these cases the main issue was whether or not there was contributory negligence as a matter of law and in each instance the court decided there was not. The distinctions pointed out in the *Karlock* case are the same distinctions that we find in our case and, therefore, it is a decision of strong probative value.

█ Defendant contends that the trial court erred in giving to the jury, at the request of the plaintiff, an instruction covering two printed pages of the abstract of record and consisting of four paragraphs. The instruction copied verbatim the first four paragraphs of a six-paragraph complaint, the fourth paragraph of which contained six allegations of negligence. The verbatim incorporation of language of the pleadings in the instructions has been approved in some cases. *Central Railway Co. v. Bannister,* 195 Ill. 48, 49; *West Chicago St. R. Co. v. Lieserowitz,* 197 Ill. 607, 610. We

are of the opinion that the better practice is not to follow such a procedure. *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207; *Cooney v. Hughes*, 310 Ill. App. 371; *Goldberg v. Capitol Freight Lines*, 382 Ill. 283, 292.

The giving of a similar instruction has on numerous occasions been criticized. *Reivitz v. Chicago Rapid Transit Co.*, supra; *Cooney v. Hughes*, supra; *Smoot v. Hollingsworth*, 265 Ill. App. 447; *Attabella v. Krzepton*, 233 Ill. App. 320. This type of instruction was ably discussed by ALAN E. ASHCRAFT, JUDGE of the Superior Court of Cook County, in the June 1951, issue of the Chicago Bar Record, page 399. In this article JUDGE ASHCRAFT analyzes the evolution of the instruction and the decisions affecting it.

 The present trend in pleading is for simplicity. This should apply with equal force to instructions. The jury should be instructed in brief, clear and simple language as to those allegations of the complaint with respect to which there is sufficient evidence for submission of the issues to the jury. *Reivitz v. Chicago Rapid Transit Co.*, supra; *Attabella v. Krzepton*, supra; *Baker & Reddick v. Summers*, 201 Ill. 52, 57; *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544, 548, and similarly defendant's defense thereto should be stated, *Fraider v. Hannah*, 338 Ill. App. 440, 452. It should be made clear to the jury that what is stated are only allegations of the complaint, and that defendant has denied them in his answer, if he has.

 This court is very reluctant to reverse a case because of a faulty instruction. An examination of the record reveals that every material allegation of negligence was supported by some evidence. This court in *Goldberg v. Capitol Freight Lines*, 314 Ill. App. 347, 360, which was affirmed by the Supreme Court in *Goldberg v. Capitol Freight Lines*, supra, said:

"We disapproved of the giving of a somewhat similar instruction in *Cooney v. Hughes*, 310 Ill. App. 371, but we did not reverse the judgment on that account, but said so far as we were informed, a judgment had not been reversed by a court of review in this State on account of the giving of a similar instruction. We there also said: 'We think the jury here was not misled. The facts were simple, the issues easily understood.' "

This statement by the court is applicable in this case. While we are highly critical of this type of instruction, it is our considered opinion that the jury in this case was not misled by the giving of it. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SCHWARTZ and TUOHY, JJ., concur.