Peter F. Jellen, Plaintiff-Appellee, v. The New York, Chicago and St. Louis Railroad Company, a Corporation, Defendant-Appellant.

Gen. No. 64-49.

Fifth District.

October 16, 1964.

Rehearing denied December 3, 1964.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), for appellant.

Morris B. Chapman and Roy W. Strawn, of Granite City, for appellee.

REYNOLDS, J.

Plaintiff's truck was struck by a train of the defendant at the grade intersection of defendant's main line with South Brown Street, in Edwardsville, Illinois, on December 13, 1961. The time was about 7:45 a. m., the weather was cold and clear, and the pavement was dry. Plaintiff's truck, traveling north on South Brown Street, at a rate of speed not greater than 25 nor less than 20 miles per hour was struck by a train of the defendant, which was traveling approximately 54 miles per hour. At the time of the collision, the front part of plaintiff's truck was across the south rail of the railroad. The truck was demolished and plaintiff seriously injured.

Plaintiff sued for personal injuries and the jury awarded him judgment in the amount of $50,000. Defendant appeals to this court.

The accident occurred at a grade crossing with South Brown Street running in a north and south direction and the railroad tracks running in an east and west direction. The train was proceeding from the east to the west. The train was composed of some 68 freight cars and four diesel engines. The engineer was riding in the right front and the fireman and the flagman riding in the left front of the cab of the leading diesel. The diesels were equipped with air horns and bells. The engineer testified there were two sets of crossings in Edwardsville with whistle posts for each set. He further testified he blew his horn for the first set of crossings and was blowing the regular road crossing signal through the second set of crossings including South Brown Street. He further testified he was operating the bell signal on the train. The fireman and the flagman corroborated the engineer's testimony that the whistle was blowing and the bell ringing as the train approached the crossing. There was testimony that the engines or diesels of the railroad stand 15 feet high above the rails, are ten feet wide, have yellow stripes on them and are about 60 feet in length. The evidence of the plaintiff and the defendant showed that at a distance of 90 feet south of the crossing, there were no obstructions and there was a clear view of the tracks for a distance of approximately 320 feet east of the crossing. There were some small bushes, but there was no foliage. The nearest house on Brown Street was 93 feet east of Brown Street and 65 feet south of the tracks. Plaintiff admitted he could see approximately 320 feet down the tracks to the east without obstruction.

Plaintiff estimated his speed at not more than 25 miles nor less than 20 miles per hour. His windows were up, his heater was on and he had his radio going to hear the weather report. He crossed the Brown Street Crossing at least twice each working day. He

had lived about three blocks from the crossing for one year and nine months prior to the accident and was familiar with the movement of trains and vehicular traffic over the crossing. It was estimated there were at least 800 to 1000 vehicular crossings per day. Plaintiff testified when he was 90 feet from the crossing he looked to the right and saw no train or anything on the railroad. He drove on to a point approximately 50 to 60 feet from the crossing and looked to the left. Seeing nothing to the left he continued at the same speed to a point about 35 to 40 feet from the crossing and looked again to the right. At that time, he saw the train approximately 100 feet away. He immediately tried to apply his brakes and had braked to nearly a stop with his front wheels over the south rail of the track when the collision occurred. He was positive there was no bell or whistle sounding as he approached the crossing or at the time of the collision.

Violet Reese lived near the crossing on Brown Street at the time of the accident. She heard the vibration and noise of the train coming, but did not hear any whistle or bell before the collision.

Lillian Onori lived near the crossing on Brown Street at the time of the collision. She heard the rumble of the train, but did not hear any bell or whistle.

Nancy Schipkowski was with her boy friend Bob Carter on Wolf Street, about two blocks west of the Brown Street crossing. She did not hear any bell or whistle, but admitted there might have been one and she did not hear it. Carter did not hear any whistle or bell.

■ The first point raised by the defendant is that plaintiff was guilty of contributory negligence as a matter of law. It contends that a person approaching a railroad crossing must do so with a degree of

care proportionate or commensurate to the known danger and failure to do so constitutes contributory negligence. If the plaintiff was guilty of contributory negligence he cannot recover. To determine whether there was contributory negligence as a matter of law, only the evidence that is not controverted can be considered. The speed of the train as testified by the train crew is not controverted and can be considered as proved to be 54 miles per hour. The speed of plaintiff's truck from 90 feet south of the crossing to the collision point, is established by the plaintiff and is not controverted. He establishes this speed at not more than 25 nor less than 20 miles per hour. The weather, the dry condition of the pavement and the good visibility are not in dispute. The ability of the plaintiff to see to the east along the railroad tracks a distance of at least 320 feet, is admitted by the plaintiff. There was no testimony of any other traffic being involved in the accident.

The plaintiff had lived within three blocks of this crossing for a year and nine months. He was familiar with it, knew of the trains that crossed it and he estimated the vehicular traffic over it at at least 800 vehicles per day. He traveled over the crossing at least twice each working day.

The engine of the train or the first diesel unit stood over fourteen feet high, was fifty feet long and had yellow stripes.

Leaving out the question of whether the whistle had been sounded or was sounding, whether the bell was or was not ringing, since they are disputed questions, and considering only the unquestioned facts, the question raised by the defendant on appeal is whether the plaintiff was approaching the crossing and not exercising the degree of care proportionate or commensurate to the known danger, or stated another

way, was the plaintiff guilty of contributory negligence as a matter of law?

The question of contributory negligence becomes a question of law only when the evidence is so clearly insufficient as to care or so clearly showing lack of care that all reasonable minds would agree that the plaintiff was guilty of contributory negligence. Bales v. Pennsylvania R. Co., 347 Ill App 466, 107 NE2d 179; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47.

Under our law, a person claiming another person negligent and claiming damages by reason of such negligence must first prove that he himself was not guilty of such negligence as to contribute to his injury or damages. Unless he proves himself free from such contributory negligence, he cannot recover, even though the other party is clearly negligent. Our courts have not, as yet, adopted the comparative negligence rule.

In considering whether the plaintiff was negligent as a matter of law, the court cannot weigh the evidence and all contradictory or explanatory evidence must be rejected. The question is one of whether there is a total lack of evidence to prove the plaintiff's complaint. Thomason v. Chicago Motor Coach Co., 292 Ill App 104, 10 NE2d 714; Yess v. Yess, 255 Ill 414, 99 NE 687; McCune v. Reynolds, 288 Ill 188, 123 NE 317; Bales v. Pennsylvania R. Co., 347 Ill App 466, 107 NE2d 179.

In the case of Bales v. Pennsylvania R. Co., 347 Ill App 466, at page 473, 107 NE2d 179, the court said:

"Defendant cites as sustaining their contention Moudy v. New York, C. & St. L. R. Co., 385 Ill 446, 53 NE2d 406; Swenson v. Chicago, M., St. P. & P. R. Co., 336 Ill App 287, 83 NE2d 375; Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d

201; Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 164 NE 142 and Monken v. Baltimore & O. R. Co., 342 Ill App 1, 95 NE2d 130. In each case there was a variation in the facts but the point upon which the decision was finally determined was whether or not plaintiff's view of the train prior to the collision was unobstructed. If it was unobstructed, defendant was entitled to a directed verdict. If it was not, it was a question of fact for the jury to decide."

■    Taking the speed of the train to be established at 54 miles per hour, and taking the testimony of the plaintiff as true, with a maximum speed of plaintiff's truck at 25 miles per hour and a minimum speed of 20 miles per hour, and using 320 feet east of the crossing for the unlimited visibility of the plaintiff at 90 feet south of the crossing and add the collision of the train and truck at the crossing, any computation of the speed of the train and the truck will come up with the same answer, namely that at least 75 feet of the train was in full view of the plaintiff when he was 90 feet south of the crossing. Without slackening speed, he proceeded to a point he estimated at 35 to 40 feet from the crossing, and at this time over 200 feet of the train was in full view. The plaintiff did not see the train until it was 100 feet away, yet it was there in view. The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 164 NE 142. Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d 201. In the case of Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 147 NE2d 376, a like view is stated where the court said: "Nor does the law tolerate the absurdity of permitting a plaintiff to say he looked

and did not see the approaching train, when had he looked he would have seen it."

The crossing where the accident occurred in this case was a grade crossing. There were no warning signals, there was no watchman, and while there was nothing in the evidence to show extra hazardous conditions, the plaintiff was well aware of the traffic, both rail and vehicular over the crossing, and was well aware that this crossing was a dangerous place. The law requires that this plaintiff or any plaintiff approach such a dangerous crossing with that degree of care proportionate to the known danger. Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 147 NE 2d 376. The law requires that the traveler make diligent use of his senses of sight and hearing and exercise care commensurate with the danger to be anticipated. Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 164 NE 142; Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 147 NE2d 376.

The case of Overman v. Illinois Cent. R. Co., 34 Ill App2d 30, 180 NE2d 213 was a grade crossing case with a collision between the truck of the plaintiff's intestate and the defendant railroad's passenger train. In that case there were bushes six feet high along the tracks which while hiding the lower part did not hide the upper part of the train. In that case, as here, the weather was cold and clear, visibility was good and the crossroad was dry. The decedent there was driving four to five miles per hour, while here the plaintiff was driving 20–25 miles per hour. In the Overman case the judgment for the plaintiff was reversed, and the court in arriving at its decision said:

"A motion for a directed verdict should be allowed if, when all the evidence is considered, with all reasonable inferences and intendments therefrom in its aspects most favorable to the party

51

against whom the motion is directed,—here, the plaintiff,—there is a total failure to prove one or more essential elements of the case,—here, the element of due care by the decedent. The same rule is applicable in passing upon a motion for judgment notwithstanding the verdict. Railroad crossings are dangerous places, and in crossing them a person must approach the track with a degree of care proportionate or commensurate to the known danger."

The court in that case continuing, said:

"There must be some evidence tending to prove due care by the decedent. The burden is on the plaintiff. Due care cannot be presumed from the mere fact of the happening of an accident and a consideration of the human instinct of self-preservation. Liability cannot rest upon imagination, speculation, or conjecture, nor upon a choice between two views, equally compatible with the evidence, but must be based upon facts established by evidence fairly tending to prove them. If the record is without evidence of due care by the decedent, the decedent was necessarily guilty of contributory negligence as a matter of law and the Court should instruct the jury to render a verdict for the defendant."

And the court in reversing the judgment said:

"There is no evidence tending to prove due care. The plaintiff has not satisfied the burden which rested on her. The decedent was necessarily guilty of contributory negligence as a matter of law."

Applying the reasoning of the Overman case to the facts in this case, this court must find the

52

plaintiff in this case guilty of contributory negligence as a matter of law. In the Overman case, there was a claimed partial obstruction to view. Here there was none and the plaintiff had an unobstructed view of the approaching train for at least 320 feet. Had he looked he must have seen the train in time to have stopped. He testified he looked, but did not see the train. He knew the crossing and was fully aware of the danger of trains. Knowing the danger, it was the plaintiff's duty to approach the crossing with the degree of care commensurate with the situation as it existed. The proven or undisputed facts, as disclosed by the evidence, show that the exercise of ordinary care on the part of the plaintiff would have avoided this accident. There is no evidence of due care on the part of the plaintiff. The plaintiff has not satisfied the burden which rested upon him.

The other points raised by the defendant need not be discussed under the circumstances. The trial court should have directed a verdict in favor of the defendant, and failing to grant this motion, should have granted the motion for judgment for the defendant, notwithstanding the verdict.

Reversed and remanded with directions to grant the motion for judgment notwithstanding the verdict.

DOVE, P. J. and WRIGHT, J., concur.